WILSON *v.* REYNOLDS.

[No. 27,005. Filed March 1, 1938.

*John H. Kiplinger, Paul Brown,* and *Jean R. Kiplinger,* for appellant.

*Titsworth & Titsworth,* and *Scotten & Henshaw,* and *Kurt Kiesow,* for appellee.

HUGHES, J.—This was an action by the appellee against the appellant in two paragraphs. The first paragraph of the complaint was for money had and received and the second paragraph was upon the theory that appellee agreed to show a dog belonging to appellant and if she should sell the dog the appellee was to have the sum of four hundred and fifty ($450.00) dollars out of the sale price; that appellee gave the appellant a check for said amount as security for performance by appellee with the understanding that said amount would be returned to her if she could not sell said dog, but he refused, and failed to repay her said amount of money. To each paragraph of complaint the appellant filed an answer of general denial. It was the theory of the appellant that there was a sale of the dog to the appellee under an express contract and therefore she could not recover as for money had and received. A trial was had by a jury and a verdict of $477.00 was returned in favor of the appellee.

Two errors are assigned by the appellant for reversal as follows:

(1) The court erred in overruling appellant's motion to require the plaintiff to elect on which paragraph of amended complaint said cause would be submitted to the jury.

(2) The court erred in overruling the appellant's motion for a new trial. Under this assignment forty-

two (42) reasons are set out why the motion should be sustained.

It appears from the evidence that the appellee is a resident of Chicago and is in the business of breeding, training, and exhibiting Dobermann Pinscher dogs; that the appellant is also in the dog business, having kennels in Rush County, Indiana; that on the 24th day of February, 1931, the appellee was in Indianapolis, and being interested in dog kennels drove down to the place of the appellant near Rushville in company with a Mrs. Gilmore. Upon arriving at the residence of the appellant he showed her his kennels and exhibited to her the dog in question which was a Dobermann Pinscher dog about two years old. The appellee told the appellant that she thought she could sell the dog to a party in Chicago and that she could probably sell it for four hundred and fifty ($450.00) dollars. Appellant was willing for her to take the dog and sell him. The appellee suggested that she would give the appellant her check for the above amount to show her good faith and it may fairly be inferred from the evidence that if appellee could not sell the dog to the prospective purchaser it would be returned to the appellant and her deposit be returned to her. The dog was to be exhibited to the prospective purchaser and it was agreed that he would be returned in as good shape as when taken. The appellee informed the appellant that her prospective purchaser wanted a well trained dog and appellant represented that the dog was thoroughly trained. The evidence shows, however, that he was not trained and not even house-broke. There is no evidence to show how long the appellee was to keep the dog. The appellee and Mrs. Gilmore brought the dog back to Indianapolis in their automobile and while enroute the dog showed evidence of intestinal trouble. On the evening of February 24th, the appellee and her husband returned to

Chicago on a train and kept the dog in the drawing room with them. After arriving home she kept the dog in her apartment for about four days and then took it to Mrs. Gilmore's apartment where it remained possibly ten days. It was exhibited to the prospective purchaser, but he would not buy it. The dog was very timid and would not perform on exhibition. On February 28th, the appellee notified appellant of this fact. On March 3rd, the appellant wrote a letter to the appellee telling her not to worry about the dog and that if she could not sell it he could sell it in Rushville and for her to take her time with it and he would see that she was not stuck. The dog trainer of the appellee after wroking with the dog was unable to do anything with it. On March 18th, the appellee sent some dogs in a truck to Cincinnati for the purpose of exhibition and sent the dog in question along with instruction to the two truck drivers to leave it at the appellant's place as they passed. The appellee had telephoned the appellant what she intended to do and that he could return her money and he replied, "All right." On the 19th day of March the dog was left at the kennels of the appellant.

The evidence further shows that during the time the appellee had the dog he was provided with proper food and was given proper care and attention. Due to its nervousness and the strange surroundings the dog did not eat well and consequently lost some weight.

The appellant insists that the court erred in over-duling causes 23, 24, 25, 26, 27, 28, 29, and 30 for a new trial. Each of the causes relate to questions concerning what was said by the appellant to the men who returned the dog. It is not necessary to set out these questions. It is sufficient to say that the court committed no reversible error in its rulings thereon. What was said to the truck drivers or by them to the appellant would not bind the appellee in her absence.

It was not shown that the truck drivers were the agents of the appellee and she could not be bound by anything they might have said in her absence. They were merely to leave the dog at the appellant's kennels. Under the evidence it was only the duty of appellee to return the dog to the appellant in the event she did not sell him. This was done. She was a bailee of the appellant and was only required to use reasonable care while she had the dog. If she did not use such care then she would have been liable to the appellant for any damage done. This however, was not at issue. No counter claim or set-off for damages was filed by the appellant. Moreover, the evidence as to the condition of the dog when appellee took him and when she returned him was conflicting and this court will not weigh the evidence.

When the appellant was on the witness stand he was asked the question—"Now, Mr. Wilson, when this dog was returned by the men of Mrs. Reynolds there, you may tell the jury whether you accepted that dog as his own dog." This question was objectionable and the court did not err in its ruling. It clearly invaded the province of the jury. Even if the subject matter of the inquiry was proper it was for the jury to say whether he accepted the dog as his own after having the facts and evidence relating thereto. Likewise cause 32 is objectionable for the same reasons.

The question as set out in reason 33 for a new trial is clearly objectionable. The question asked the appellant whether or not he at any time held out to any one or stated that the dog was his dog. The answer would necessarily be a self serving declaration.

Causes 37 and 38 for a new trial relate to questions concerning the care and keep of the dog from the 19th day of March, 1931, to November 14, 1931, and so long as he remained in appellant's possession. These ques-

tions relate to matters not within the issues of the case and therefore are improper.

The appellant insists that the court erred in giving instruction No. 12, which is as follows:

"In determining from the evidence given in the cause the terms and conditions of the contract set out and described in the second paragraph of plaintiff's amended complaint, and whether or not, said contract had been entered into by the defendant and the plaintiff, it is proper for you to take into consideration the acts and conduct of the parties, themselves, toward the same, and if you believe from the evidence that the defendant received the dog in question upon his return by the plaintiff, and exercised acts of ownership over said dog, inconsistent with plaintiff's ownership thereof, then the defendant would be bound thereby and could not afterwards claim and assert that said dog was not his property, and in which event, he would be bound to return the price thereof, and your finding should be for the plaintiff provided you believe that all of the other material allegations of the second paragraph of the amended complaint have been proven by a fair preponderance of all of the evidence given in the cause."

When considered as applicable to the allegations of the second paragraph of complaint we feel that the instruction was proper and applicable to the evidence. It was proper for the jury to take into consideration the acts and conduct of the parties, themselves relative to the alleged contract, and if the appellant exercised any acts of ownership over the dog inconsistent with the plaintiff's ownership, the jury was entitled to consider this in arriving at their verdict. We think the appellant is in error in contending that the instruction assumes that the contract was in accordance with the terms and conditions as set out and described in the

second paragraph of complaint. The jury was told that it was proper to take into consideration the acts and conduct of the parties themselves in determining whether the contract as set out in the second paragraph of complaint was entered into by them. This is certainly a proper statement. We think the instruction was proper and not harmful to the appellant.

The appellant also complains of the giving of instruction No. 9 which is as follows:

"Parties who enter into contracts must be deemed to enter into such contracts with reference to natural laws, known to both parties, affecting the subject matter of the contract. If you find that the parties to this action entered into an agreement concerning the dog in controversy, and that each party was aware of certain natural characteristics of dogs of the class of the one involved in this suit, of such a nature that the natural and probable consequences of moving such a dog to new and strange surroundings would be a certain impairment of the health of said dog, then I instruct you that even though you should find that the plaintiff agreed to return said dog in good health, and failed to do so, the plaintiff would not be responsible for said failure to return said dog in good health unless such failure was due to some negligent act or omission on the part of the plaintiff."

The appellant especially complains of that part of the instruction relating to "natural law." This part of the instruction is perhaps meaningless, but it is not harmful to the appellant. Is clearly had reference to the "natural characteristics" of Dobermann Pinscher dogs. The remaining part of the instruction is proper and applicable to the issues in the case. The evidence in the case shows that Dobermann Pinscher dogs are as a class highly nervous and timid and especially so among strangers. This was admitted by the

appellant in his letter to the appellee of February 28th. And he further admitted that this class of dogs did not eat much when nervous. Evidence of other witnesses was to the same effect. The jury could have inferred from the evidence that both the appellant and appellee knew of the peculiar characteristics of this particular class of dogs when among strangers and strange surroundings. If by reason of the peculiar character of said dog, and known to both parties, he failed and refused to eat when in the possession of the appellee and by reason thereof his health was impaired to some extent when he was returned this could not be charged to the appellee although she agreed to return the dog in good health unless some act of negligence on her part caused the ill health of the dog, if he was in ill health when returned. This question was left to the jury to decide and the evidence thereon was conflicting. The instruction was not erroneous.

Instruction No. 10 complained of by the appellant is so clearly correct and applicable to the evidence and issues that it is not necessary to discuss the same.

There was no error in refusing to give a peremptory instruction, asked by appellant, to direct a verdict in favor of appellant on the first paragraph of the complaint. The appellant, after the court refused to give the peremptory instruction then tendered instruction No. 3, which is as follows:

"You are instructed as a matter of law, that if you find from all the evidence in this case that there was a special contract between the plaintiff and the defendant concerning the sale and purchase of the dog in question, then I instruct you that you must find for the defendant on plaintiff's first paragraph of complaint."

There has been much said by our court on special, express, and implied contracts, but we think it is definitely settled by this court that where the "contract has been

executed on the part of the plaintiff and the time of payment on the other side is past, a suit may be brought on the special contract, or a general assumpsit may be maintained; and in the last case, the measure of damage will be the rate of recompense fixed by the special contract." *Board* v. *Gibson* (1902), 158 Ind. 471, 63 N. E. 982; *Jackson* v. *Creek* (1911), 47 Ind. App. 541, 94 N. E. 416; *Kerstetter* v. *Raymond* (1858), 10 Ind. 199. In the case of *Jenney Elec. Co.* v. *Branham* (1896), 145 Ind. 314, 316, 41 N. E. 448, 33 L. R. A. 345, it is said:

> "While the rule that one may plead the common count and recover, notwithstanding the evidence disclosed a special contract, would, upon the first impression, seem to be at variance with the ordinary rules of pleading and practice, yet it has been repeatedly held that under our code such recovery may be had."

In the instant case the evidence shows that the contract had been fully executed on the part of the appellee and the time of payment on the part of appellant had passed and therefore, conceding that the second paragraph was based upon a special contract, the first paragraph was proper. It naturally follows that there was no error in the court refusing to require the appellee to elect upon which paragraph she would proceed.

We think there is sufficient evidence to sustain the verdict and judgment and that it is not contrary to law.

Judgment affirmed.

Roll, J. absent.