LAMBERT *v.* STATE OF INDIANA.

[No. 668S86. Filed July 24, 1969. No petition for rehearing filed.]

*William C. Burns,* Lafayette, for appellant.

*John J. Dillon,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

JACKSON, J.—Appellant, on July 13, 1967, was charged by affidavit with the crime of second degree burglary, to which he entered a plea of not guilty. Trial by jury began on December 5, 1967, and the jury found the defendant guilty as charged. On December 6, 1967, appellant was sentenced to the Indiana State Prison for a term of not less than two nor more than five years.

On December 22, 1967, appellant filed a Motion for a New Trial alleging, in essence, that:

a.) The trial court denied appellant a fair trial by setting excessive bail, and by refusing to grant appellant a continuance in order to give him an opportunity to raise the necessary funds for bail;

b.) The verdict of the jury is contrary to law;

c.) The verdict of the jury is not sustained by sufficient evidence;

d.) The trial court erred in refusing to give appellant's tendered instructions numbered 2, 4, 5, 6 and 7.

Appellant's motion for a new trial was overruled on March 21, 1968. On appeal, appellant's sole assignment of error is that the trial court erred in overruling his motion for a new trial.

From the evidence adduced at trial, it appears that on Sunday, July 2, 1967, at approximately 8:15 p.m., a burglar alarm system in the Lafayette Police Department connected directly with Town & Country Lumber Company sounded indicating a possible disturbance at the Town and Country Lumber Company which is located in Lafayette. Two police cars were immediately dispatched, and they arrived at the scene at approximately 8:20 p.m.

There are two buildings on the lumber yard which are connected by a common roof. A driveway running north and south passes between the buildings and under the roof. A picket fence, preventing access to the lumber yard and buildings, is extended across the driveway whenever the business is closed, as it was on the day in question. To the south of the building, at the back of the lumber yard, is a board fence along which is kept various materials. Immediately beyond the fence is a very steep hill approximately twenty feet in height. At the top of the hill is located a used car lot.

The two police cars arrived at the scene simultaneously. Sgt. Eberle drove up from the north side of the buildings, and advanced as far as the picket fence blocking the drive. Officer Griffen drove his car to the west side of the building.

As Sgt. Eberle emerged from his car he saw two men run out of a door of the building located on the east side of the driveway. One man was dressed in a white short sleeve shirt, and the other wore a dark short sleeve shirt. Both men ran to the south between the two buildings. Sgt. Eberle then shouted to Officer Griffen that the two men were running out the back of the lumber yard.

Officer Griffen, stationed on the west side of the buildings, climbed to the roof of his car, jumped over the picket fence, and then ran to the south end of the buildings. When he reached the south end of the buildings, he saw a man running south toward the board fence at the south end of the lumber yard. Griffen told the man to halt, and identified himself as a police officer, but the man kept running. Griffen then fired two warning shots. However, the man jumped over the fence and began climbing the hill. When the subject was approximately five feet from the top of the hill, Officer Griffen fired a third shot, which was aimed at the fleeing man. Officer Griffen testified that he knew that the bullet had struck the subject. The man then fell forward over the crest of the hill.

When Officer Griffen reached the top of the hill he saw appellant lying beside a parked car with a wound in his right leg. Appellant, at that time, was wearing a white short sleeve shirt, and dark trousers. He was also wearing a pair of dirty brown gloves.

Investigation of the lumber yard revealed that a door to the office building had been broken open, and that there were marks on the door of the vault located at the rear of the office. Approximately twenty to thirty feet south of the door to the building were found a sixteen pound sledge hammer, a crow bar, a nail puller and another pair of gloves.

The first allegation of appellant's motion for a new trial is that the appellant was denied a fair trial because the trial court set excessive bail, and refused to grant him a continuance. However, this issue has been neither briefed nor argued by appellant, and, accordingly, is thereby deemed to have been waived. *McGill v. State* (1969), 252 Ind. 293, 247 N. E. 2d 514; *Krivanek v. State* (1969), 252 Ind. 277, 247 N. E. 2d 505; *Dombkowski v. State* (1967), 249 Ind. 32, 230 N. E. 2d 602. The fact being admitted by appellant in his reply brief.

Appellant next contends that the evidence was insufficient to sustain the verdict of the jury. In deciding questions of this nature we are limited by the long standing rule ■ ■ that this Court, on an appeal will not weigh the evidence or determine the credibility of the witnesses. *McGill v. State, supra; Davis v. State* (1968), 249 Ind. 373, 232 N. E. 2d 867; *Stock v. State* (1966), 247 Ind. 532, 219 N. E. 2d 809; *Barnes v. State* (1965), 246 Ind. 485, 205 N. E. 2d 539. Moreover, we are bound to consider only that evidence most favorable to the State, together with all reasonable and logical inferences which may be legally drawn therefrom. *McGill v. State, supra; Langley v. State* (1968), 250 Ind. 29, 232 N. E. 2d 611; *Reid v. State* (1967), 249 Ind. 247, 231 N. E. 2d 808; *Fisher v. State* (1966), 247 Ind. 529, 219 N. E. 2d 818.

In reviewing the evidence in accordance with the above standards, we cannot say, as a matter of law, that the evidence presented by the State was insufficient to sustain a verdict of guilty of the crime of second degree burglary. The statute under which appellant is charged is Acts 1941, ch. 148, § 4, p. 447, being Indiana Ann. Stat. § 10-701 (b) (1956), which reads in pertinent part as follows:

"Whoever breaks and enters into any . . . building or structure other than a dwelling-house or place of human habitation, with the intent to commit a felony therein, shall be guilty of burglary in the second degree . . . ."

The affidavit charging appellant with the crime reads in pertinent part as follows:

"The undersigned affiant, being first duly sworn on oath, says that on the 2nd day of July, 1967, at the County of Tippecanoe in the State of Indiana, one DENNIS ARTHUR LAMBERT did then and there unlawfully, feloniously and burglariously break and enter into the building of Town and Country Lumber Company, Inc., an Indiana Corporation located at 1307 Ferry Street in the City of

Lafayette in said County and State with the intent to commit a felony, to-wit: knowingly, unlawfully and feloniously obtain and exert unauthorized control over the property of the said Town and Country Lumber Company, Inc., an Indiana Corporation, intending to deprive Town and Country Lumber Company, Inc., an Indiana Corporation, permanently of the use and benefit of said property contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Indiana."

The material elements of second degree burglary are:

1. Breaking and entry:

2. of a building or a structure other than a dwelling house or place of human habitation;

3. with the intent to commit a felony therein.

Appellant admits, at pages ninety-three and ninety-four of his brief, that the State presented sufficient evidence to establish the first two elements referred to above. Appellant, however, contends that the State failed to establish that the breaking and entering was done with the intent to commit a felony, and that the appellant was the person who committed the crime.

In establishing that the breaking and entering was done with the intent to commit a felony, the trier of fact could and evidently did infer this from the evidence adduced at trial. This element could have been inferred from the evidence pertaining to the marks that were made in the metal of the vault door. Complementing this evidence was the evidence pertaining to the presence of tools that could be used as burglary tools. Thus, we cannot say that the evidence was insufficient to establish the inference on the part of the jury that the breaking and entering was done with the intent to commit a felony. It is a well settled

principal of law that "intent" may be inferred from the circumstances which legitimately permit it. *Tait v. State* (1963), 244 Ind. 35, 188 N. E. 2d 537; *Dennison v. State* (1952), 230 Ind. 353, 103 N. E. 2d 443; *Luther v. State* (1912), 177 Ind. 619, 98 N. E. 640.

Further, we cannot say as a matter of law that the evidence was insufficient to establish that the appellant was the one who committed the crime. Sgt. Eberle testified that he saw two men, one wearing a white shirt and the other a dark shirt, exit from the office building and run south to the back of the lumber yard. Sgt. Eberle then alerted Officer Griffen, who jumped over the west fence and into the lumber yard. Officer Griffen testified that he saw a man running south toward a board fence at the south end of the lumber yard. The man refused to halt after being told to do so by Officer Griffen, who identified himself and fired several warning shots. Instead, the subject jumped over the south fence of the lumber yard, and began climbing the hill immediately beyond. Officer Griffen stated that he fired a shot at this man when the man was approximately five feet from the crest of the hill. Officer Griffen said that he knew that the shot hit the man, and that the man appeared to fall over the crest of the hill. Only a few minutes later, appellant was found lying in a car at the top of the hill, and about fifteen feet from the crest of the hill, with a bullet wound in his lower right leg.

Judging from the cross-examination of Officer Griffen by appellant's counsel, there was apparently little doubt on counsel's part that the appellant was the man who was climbing the hill, and who was shot while climbing the hill, by Officer Griffen. That counsel thought appellant was the man in question is evident from the following excerpts from the cross-examination of Officer Griffen by appellant's counsel.

"Q. Your shot *at Mr. Lambert,* which you directed at his legs, could not have gone over the crest of the hill?

A. The one I shot *at Mr. Lambert?*

Q. Yes." (Emphasis added). (Tr. p. 123)

"Q. How far was Mr. Lambert from the crest of the hill when you first saw him *after you had shot him?* How far from the crest of the hill *was Mr. Lambert when you saw him after you had shot him?*" (Emphasis added.) (Tr. p. 125).

Thus, it was established to the satisfaction of the jury, through questions propounded by appellant's own counsel, that appellant was the man shot and wounded by Officer Griffen while climbing the hill.

Further, Officer Griffen testified that the person climbing the hill was the same person he saw running south through the lumber yard and toward the board fence. When found at the top of the hill, appellant was wearing a white, short sleeve shirt, and dark trousers. One of the men that Sgt. Eberle saw leave the office building and run south through the lumber yard was also wearing a white short sleeve shirt. It must also be remembered that Officer Griffen saw appellant only a few moments after being alerted by Sgt. Eberle. Therefore, in viewing the evidence most favorable to the State, as we are bound to do, we cannot say that the evidence was insufficient to sustain the verdict.

It is appellant's contention that he was merely looking at cars in the lot at the top of the hill when he suddenly felt something strike him in the leg. He testified that he was not in the lumber yard that day, and was not the man seen climbing the hill. Thus, there is conflicting evidence as to whether appellant was the man seen climbing the hill. However, this court will not weigh conflicting evidence on appeal. *Stock v. State, supra; Barnes v. State, supra; Mattingly v. State* (1957), 236 Ind. 632, 142 N. E. 2d 607. Moreover,

as pointed out above, there was evidence from which the jury could find that appellant was the man seen leaving the office, and who was later shot while climbing the hill.

Appellant next contends that the trial court erred in refusing to give appellant's tendered instructions numbered 2, 4, 5, 6 and 7.

Appellant's tendered instruction number 2 pertains to circumstantial evidence. It reads as follows:

> "In order to justify a verdict of guilty in a criminal case, the circumstances relied upon by the State for conviction must be so strong as to exclude every other reasonable hypothesis except that of the defendant's guilt. It is not enough that a supposition of guilt, on the part of the defendant, would afford an explanation of the acts and conduct of the defendant, nor would the fact, if such be the fact, that the circumstances in the case cast suspicion of guilt upon the defendant, however much or little, justify you in finding him guilty, as long as the evidence leaves standing some reasonable hypothesis of the defendant's innocence. The mere coincidence of a given number of circumstances with the hypothesis of guilt, or the fact that they would account for or concur with, or render probable the guilt of the accused, is not a reliable test, unless the circumstances rise to such a degree of cogency and force as in the order of natural causes and effects exclude to a moral certainty every other hypothesis except the single one of guilt."

Appellant contends that since he was convicted on the basis of both circumstantial and direct evidence, his tendered instruction number 2 was necessary to properly instruct the jury on circumstantial evidence.

We agree with appellant that it was necessary for the trial court to instruct the jury on the effects of circumstantial evidence. However, we cannot agree that it was error to refuse to give appellant's tendered instruction number two. It is not error to refuse an instruction covered by another or other proper instructions. *Johnson v. State* (1968), 251 Ind. 182, 240 N. E. 2d 70; *Eastin v. State*

(1954), 233 Ind. 101, 117 N. E. 2d 124. In lieu of the instruction offered by the appellant, the court gave instruction number 16, which reads:

> "The guilt of the accused is not to be inferred merely because the facts proved are consistent with his guilt, but, on the contrary, before there can be a verdict of guilty with respect to the crime charged you must believe from all the evidence and beyond a reasonable doubt that the facts proved are inconsistent with his innocence as to such crime. If two conclusions can reasonably be drawn from the evidence, one of innocence and one of guilt, you should adopt the conclusion of innocence."

The above instruction provides that guilt cannot be inferred from the facts proved merely because such a finding would be consistent with those facts. It further instructs the jury that the guilt of the defendant must be believed beyond a reasonable doubt, and that if the evidence supports two conclusions, one of guilt and one of innocence, the conclusion of innocence should be adopted. Thus, the instruction given by the trial court substantially covers the material parts of appellant's tendered instruction number two. It therefore was not error for the trial court to refuse appellant's tendered instruction number two. *Johnson v. State, supra; Eastin v. State, supra.*

Appellant also contends in his motion for a new trial that the trial court erred in refusing to give appellant's tendered instruction number four. However, appellant has omitted from the argument portion of his brief any reference to this alleged error and it is therefore deemed to have been waived. *McGill v. State, supra; Krivanek v. State, supra; Dombkowski v. State, supra.*

Appellant next contends that the trial court erred in refusing to give appellant's tendered instruction number five, which reads as follows:

> "The mere fact that a supposition of guilt would afford a solution of what would otherwise by mysterious or unex-

plained, will, in no case, authorize a conviction and the defendant is not bound to explain anything and so long as you entertain a reasonable doubt as to the guilt of the defendant, even though you are not satisfied as to his innocence, then you should acquit him."

This instruction was intended to inform the jury that the defendant in a criminal case is presumed to be innocent, and is thus not bound to disprove evidence presented by the State or to otherwise attempt to establish his innocence. It further instructs the jury that it must find the defendant innocent if it entertains any reasonable doubt as to his guilt. However, as the trial court's instructions numbered 7 and 15 amply deal with the concepts of "reasonable doubt" and "presumption of innocence," it was not error for the trial court to refuse appellant's tendered instruction number five. *Johnson v. State, supra; Eastin v. State, supra.*

Next, appellant argues that the trial court erred in refusing appellant's tendered instruction number six. This instruction reads as follows:

"Under the law the defendant is presumed to be innocent, and presumed not to be guilty until he has been proven so by the evidence in this case beyond a reasonable doubt. This presumption of innocence attaches to the defendant at every stage in this case from the beginning to the end, and until it is overcome by evidence which leaves no reasonable doubt in the minds of the jury of the guilt of this defendant. The defendant is not to be convicted by mere conjectures, suspicions or theories; he can only be convicted, if at all, under the rules of law and the evidence given to you upon the trial of this case."

Appellant concedes that the court's instruction number seven satisfies the requirement of instructing the jury as to the presumption of innocence surrounding the defendant. However, he contends that it was necessary to instruct the jury that the defendant could not be found guilty on the basis of "mere conjectures, suspicions or theories." This, however, is covered by the court's instructions numbered 16 and

18. Instruction number 16 instructs the jury that "guilt cannot be inferred merely because the facts proved are consistent with his guilt . . .," and that "[i]f two conclusions can be reasonably drawn from the evidence, one of innocence and one of guilt, you should adopt the conclusions of innocence." Coupled with this is instruction number 18, which instructs the jury that "[i]t is necessary that *every material element of the crime charged* against an accused *should be proved by the evidence beyond a reasonable doubt.*" (Emphasis supplied). Together, the court's instructions numbered 16 and 18 amply cover the substance of appellant's tendered instruction number six. Therefore, it was not error to refuse appellant's instruction number six. *Johnson v. State, supra; Eastin v. State, supra.*

Lastly, appellant contends that it was error to refuse his tendered instruction number seven. This instruction deals with the manner in which the jury may consider the evidence of the appellant's prior criminal record, and reads as follows:

"The defendant has testified as to his past criminal record. This is not evidence that he committed the alleged July 2, 1967 burglary of Town and County (sic) Lumber Company, Lafayette, Indiana. You may consider this evidence in deciding whether or not the balance of defendant's testimony is truthful."

In place of the above tendered instruction the trial court gave instruction number 25, which provided that:

"Evidence has been introduced in this case that the defendant has been heretofore convicted of crime. You have the right to consider such evidence for whatever bearing you may find it has upon his credibility as a witness. But you may not consider such evidence for any other purpose, nor can you draw from it the inference that because he has been previously convicted of crime it is therefore more likely that he is guilty of the crime with which he is now charged."

Even the most cursory glance reveals that the court's instruction number 25 is far more complete and beneficial to the appellant than his own tendered instruction number seven. Further, it more than adequately covers the material portions of tendered instruction number seven, and takes greater care to point out that evidence, in this case, of prior convictions may *only* be considered for purposes of determining the witness-defendant's credibility, and that such evidence may not be used as a basis from which to infer guilt of the crime for which he is being tried. Accordingly, there was clearly no error in refusing to give appellant's tendered instruction number seven.

We note, without approval, that the police officer who wounded appellant was using ammunition of unusually high velocity and with a hollow nose (hollow point) bullet designed to inflict the maximum amount of injury. The use of dum dum bullets is prohibited for use in warfare by international law. The bullet that struck appellant is more lethal than the dum dum bullets above mentioned. We further point out that at the time of the shooting appellant was only a suspect, was according to the officer's testimony running away attempting to escape, was unarmed, was not attacking or attempting to attack the officer and presented no threat or danger to the officer. Under all circumstances here existent we can only come to the conclusion the officer was not justified in the excessive use of force displayed in this matter, nor can the use of this particular type of ammunition for general police work be justified.

The judgment of the trial court is affirmed.

DeBruler, C. J., and Hunter, J., concur; Arterburn and Givan, JJ., concur in result.

NOTE.—Reported in 249 N. E. 2d 502.