MIKE JOHNSON *v*. STATE OF INDIANA.

[No. 770S150. Filed April 25, 1972.]

*John G. Bunner,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert A. Zaban,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted of robbery in a trial by jury under Acts of 1941, ch. 148, § 6, 1956 Repl. Burns Ind. Stat. Ann. § 10-4101, IC 35-13-4-6. He was sentenced to imprisonment for not less than ten nor more than twenty-five years and disfranchised for five years. His Motion to Correct Errors assigns grounds 1 through 11. Alleged errors 5, 7 and 9 have been waived under Appellate Rule 8.3 (A) (7).

Alleged errors 1, 2, 3, 4 and 8 are treated together in Appellant's brief and relate to the overruling of his motion to quash the affidavit and the sustaining of the State's motion, at the close of its evidence, permitting it to amend the date of the jurat upon the charging affidavit.

The charging affidavit was as follows:

"HERMANN C. HAYES being duly sworn upon his oath says that MIKE JOHNSON on or about the 29th day of October A.D., 1969, at said County and State as affiant verily believes did then and there unlawfully, feloniously and forcibly and by violence and putting DONNA MASON in fear, rob, take and steal from the person of the said DONNA MASON Three Hundred Dollars ($300.00) in lawful and current money of the United States of America, then and there belonging to PAUL ROY, doing business as ROY'S MARKET, a sole proprietorship.

Then and there being contrary to the form of the Statute, in such cases made and provided and against the peace and dignity of the State of Indiana.

/s/ Herman C. Hayes

Subscribed and sworn to before me, the undersigned Clerk of the Vanderburgh Circuit Court this 5th day of October, 1969.

/s/ Joseph F. O'Day
Clerk of the Vanderburgh Circuit Court
/s/ Per Margueritte Harding
Deputy"

The reverse side of the affidavit shows it to have been filed on December 5, 1969.

The motion to quash and supporting memo was as follows:

## "MOTION TO QUASH

The defendant moves the Court to quash Count II of the affidavit herein on the following grounds:

1. The facts stated in said affidavit do not constitute a public offense.

2. Said affidavit does not state the offense charged with sufficient certainty.

/s/ John G. Bunner
Attorney for Defendant

MEMORANDUM

Count II of the Affidavit does not state a public offense and does not state the offense with sufficient certainty for the reason that it does not allege the correct time or date and that any defense made by the defendant to the charge herein would be prejudiced by said failure.

/s/ John G. Bunner
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that I have personally served a copy of the above and foregoing Motion upon the Prosecuting Attorney for the State of Indiana this 2nd day of February, 1970.

/s/ John G. Bunner"

The evidence disclosed that the robbery with which the defendant was charged took place on October 29, 1969. The

affiant testified that he signed the affidavit on December 5, 1969, in open court and that it was then filed on that same date. The court's file mark disclosed the filing date to be December 5, 1969. (Transcript pp. 122-124). We note that the appellant's brief reflects that the affiant testified that he signed the affidavit on *October 5, 1969* and we assess this as a typographical error.

It is the defendant's position that since the affidavit alleged the date of offense subsequent in time to the date of the affidavit, it did not state a public offense and that permitting its amendment to make it good would necessarily be a change in substance, rather than in form, and prejudicial error. He relies upon *Pagotis* v. *State* (1938), 214 Ind. 697, 17 N.E. 2d 830; *Hunt* v. *State* (1927), 199 Ind. 550, 159 N.E. 149; and *Shonfield* v. *State* (1925), 196 Ind. 579, 149 N.E. 53. We find these cases distinguishable upon the facts and his contention without merit. In *Pagotis, supra,* the affidavit was returned on September 18, 1936 and charged an offense to have been committed on December 15, 1936. The amendment changed the alleged commission date to December 15, 1934. The date of the alleged commission of the offense charged is usually an essential part of the allegation, and when it is, it is, therefore, by its very nature substantive. The date of the jurat is a formality only.

As in *Pagotis, supra, Shonfield, supra,* involved an affidavit filed prior to the date of the alleged offense. The affidavit in *Hunt, supra,* alleged that the offense occurred on two different dates, i.e. "* * * on or about the 27th day of October A.D., Nineteen Hundred 1923 * * *."

The motion to quash did not direct the court's attention to the discrepancy between the date of the jurat and the date of the alleged offense. If it had, it could very easily have been corrected at that time. The alleged date of the offense was definite and anterior to the date of filing; hence the defendant could not have been misled or

prejudiced in the preparation of his defense. The subsequent amendment of the jurat appears to have been irregular, since it was predicated upon the testimony of the affiant rather than upon that of the attesting official. However, it is clear the defendant could not have been prejudiced.

The governing statutes have not been offended and provide:

> *"Immaterial Defects*—no indictment or affidavit shall be deemed invalid, nor shall the same be set aside or quashed, nor shall the trial, judgment or other proceeding, be stayed, arrested or in any manner affected for any of the following defects:
>
> Tenth. For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." (Acts of 1905, ch. 169, § 192; 1956 Repl. Burns Ind. Stat. Ann. § 9-1127; IC 1971, 35-1-23-26.)
>
> *"Amendment of Indictment or Affidavit for Defect in Form*—The court may at any time before, during or after the trial amend the indictment or affidavit in respect to any defect, imperfection or omission in form, provided no change is made in the name or identity of the defendant or defendants or of the crime sought to be charged." (Acts of 1935, ch. 189, § 1; 1956 Repl. Burns Ind. Stat. Ann. § 9-1133; IC 1971, 35-4-4-1.)

It has been held that if the defense under the affidavit as it originally stood would be equally available after the amendment is made, and if any evidence the accused might have would be equally applicable to the affidavit in one form as in the other, the amendment is one of form and not of substance. *Smith* v. *State* (1969), 252 Ind. 148, 246 N.E. 2d 765; *Kaufman* v. *Gould* (1951), 229 Ind. 288, 98 N.E. 2d 184; also see, 42 C.J.S. *Indictments and Informations*, § 240, p. 1250.

Alleged error number 6 relates to the court's having permitted a State's witness to testify, over objection, that she had previously identified the defendant at a lineup. Prior to such testimony, a hearing was held outside the view and hearing of the jury, at which it was determined that the

defendant had counsel present at the lineup and that it was properly conducted in all respects and that the witness had there identified the defendant without suggestion from any of the others present.

In *Jacoby* v. *State* (1932), 203 Ind. 321, 180 N.E. 179, cited by the defendant, the witness was allowed to testify that two weeks following the robbery, when he went to the police station with the officer, he saw the appellant come up the steps, that he then turned to the officer and told him that there was the man who had robbed him. In *Thompson* v. *State* (1944), 223 Ind. 39, 58 N.E. 2d 112, also cited by Defendant, police officers were permitted to testify that on the morning following the alleged crime the prosecuting witness had viewed the appellant through a "one way" glass and had then identified him as the man who had robbed her. In both cases we reversed. It would be difficult, if not impossible, to draw any relevant distinctions between these two cases and the one at bar. However, having re-examined them, together with other like cases and the writings of eminent authorities in the field of criminal evidence, we have concluded that they should not be followed. Other jurisdictions appear to be about evenly divided upon the question of the competency of testimony by a witness, as to his own prior identification of the defendant. The trend, however, appears to be favoring its admissibility, and other states that once refused it as hearsay, now admit it under proper circumstances.

Wigmore on Evidence, Third Edition, § 1130, is unyielding in favor of its admissibility.

> "Statements Identifying an Accused on a Former Occasion. Ordinarily, when a witness is asked to *identify* the assailant, or thief, or other person who is the subject of his testimony, the witness' act of pointing out the accused (or other person), then and there in the court-room, is of little testimonial force. After all that has intervened, it would seldom happen that the witness would not have come to believe in the person's identity. The failure to

recognize would tell for the accused; but the affirmative recognition might mean little against him.

The psychology of the situation is practically the same as when Recent Contrivance is alleged. To corroborate the witness, therefore, it is entirely proper (on the principle of § 1129, *ante*) to prove that *at a former time,* when the suggestions of others could not have intervened to create a fancied recognition in the witness' mind, he recognized and declared the present accused to be the person. If, moreover (as sometimes is done) the person was then so placed among others that all probability of suggestion (by seeing him handcuffed, for example) is still further removed, the evidence becomes stronger. The typical illustration is that of the identification of an accused person at the time of arrest: * * *." § 1130, p. 208.

"* * * This is a simple dictate of common sense, and was never doubted in orthodox practice. That some modern Courts are on record for rejecting such evidence is a telling illustration of the power of a technical rule of thumb to paralyze the judicial nerves of natural reasoning. * * *." § 1130, p. 210.

In agreement are Wharton on Criminal Evidence, Twelfth Ed., 1972 Supp. §§ 181, 182 and Underhill's Criminal Evidence, Fifth Ed., 1970 Supp. § 127. Such testimony would be admissible under the Model Code of Evidence of the American Law Institute, Rule 503 (b) which admits hearsay declarations if the declarant is present and subject to cross-examination.

Our viewpoint is summed up in the following statement from *Colbert* v. *Commonwealth,* Court of Appeals of Kentucky (1957), 306 S. W. 2d 825, 71 A. L. R. 2d 442, where that court reversed its earlier position.

"Without attempting to repeat the reasons relied upon by those authorities who uphold the admissibility of such evidence, we will simply say that we find the reasons to be sound, and we adopt the view that evidence by witness of his own previous identification of the defendant in a criminal case, under circumstances reasonably free of improper influences, is competent. We think the question should properly be considered one of weight, rather than of competence, and that adequate protection is af-

·forded through the opportunity for cross-examination."
71 A. L. R. 2d at 448

The question is annotated at 70 ALR 910 and 71 ALR 2d
449.

Accordingly, we hold that if the prior identification does
not offend against the principles laid down in *United States*
v. *Wade* (1967), 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d
1149, *Gilbert* v. *California* (1967), 388 U. S. 263, 87 S. Ct.
1951, 18 L. Ed. 2d 1178 or *Stovall* v. *Denno* (1967), 388 U. S.
293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199, such testimony should
be admitted; and to the extent that they conflict herewith,
*Jacoby* v. *State, supra,* and *Thompson* v. *State, supra,* are
expressly overruled.

Defendant has also cited us to *Tyrrel* v. *State* (1912), 177
Ind. 14, 97 N. E. 14; *Hicks* v. *State* (1905), 165 Ind. 440, 75
N. E. 641 and *Gilbert* v. *California, supra.* We do not agree
that these cases are relevant to this issue.

Alleged errors number 10 and 11 are that the court erred
in refusing Defendant's tendered instructions number 1 and
2, which are as follows:

"INSTRUCTION NO. 1
Where testimony is directly conflicting and all versions,
as given to you, cannot be true, and there is reasonable
doubt as to which evidence is true, it is your duty to accept
that version which is consistent with the innocence of the
defendant and find him not guilty."

"INSTRUCTION NO. 2
You are instructed that you should, if possible, reconcile
all the evidence of the case. If, however, you find a conflict
in the testimony of witnesses that you are unable to recon-
cile upon any consistent theory, then you must determine for
yourselves as to whom you will give credit, keeping in mind
that the evidence should be reconciled, if possible, with the
presumption of the innocence of the defendant."

The refusal or failure to give an instruction is not ground
for reversal, if the substance of the requested instruction is

covered by other instructions. *Doss* v. *State* (1971), 256 Ind. 174, 267 N. E. 2d 385; *Lambert* v. *State* (1969), 252 Ind. 441, 249 N. E. 2d 502; *Rariden* v. *State* (1961), 242 Ind. 689, 177 N. E. 2d 736.

An examination of the foregoing tendered instructions reveals that their substance was included in the following instructions given:

"INSTRUCTION NO. 4

You are instructed that circumstances of suspicion no matter how grave or strong, are not sufficient upon which to base a conviction. If after weighing the evidence there is in your minds a reasonable doubt as to guilt, or if your minds are evenly balanced on the subject of guilt or innocence, then your verdict should be not guilty."

"COURT'S INSTRUCTION NO. 15

A defendant is presumed to be innocent until the contrary is proved. When there is a reasonable doubt whether his guilt is satisfactorily shown, he must be acquitted. When there is a reasonable doubt in which of two or more degrees of an offense he is guilty, he must be convicted of the lowest degree only."

"COURT'S INSTRUCTION NO. 17

You are the sole judges of the facts and credibility of witnesses, who have testified as witnesses in this case. It is your duty to reconcile all the statements of witnesses on the theory that the defendant is innocent, if you can. If you cannot reconcile the statements of witnesses on account of contradictions, then you have a right to believe the witness, or witnesses, you deem most worthy of credit and disbelieve the witness or witnesses whom you believe least worthy of credit. In determining whom you will believe you may consider the nature of the evidence given by them, their interest, bias, or prejudice, if any, disclosed; their opportunity for knowing the facts about which they testify; their manner and deportment while on the witness stand; how far they are corroborated or contradicted by other testimony, and in weighing the testimony and determining the credibility of the witnesses it is proper for you to take into consideration all the surrounding circumstances of the witnesses as brought out in the evidence, their interest, if any, in the result of the action, and such other facts appearing in the evidence as will, in your opinion, aid you in determining

whom you will believe; and you may also in considering whom you will, or will not believe, take into account your experience and relations among men."

It is our opinion that the jury was adequately instructed upon the matters covered by the defendant's tendered instructions that were refused.

The judgment of the trial court is affirmed.

Arterburn, C. J. and DeBruler, Givan and Hunter, JJ., concur.

NOTE.—Reported in 281 N. E. 2d 473.