**Timothy Edgar MARTS, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

**No. 1280S438.**

Supreme Court of Indiana.

March 10, 1982.

Philip H. Hayes, Richard L. Young, John D. Clouse, Michael C. Keating, Laurie A. Baiden, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted after trial by jury of Dealing in a Narcotic Drug, Ind.Code § 35–48–4–1(1) (Burns Supp.1981), and sentenced to thirty (30) years imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court erred in allowing the State to amend the information after arraignment.

(2) Whether the trial court erred in overruling Defendant's challenge to the jurisdiction of the special judge.

(3) Whether cocaine is properly classified as a narcotic drug and whether the penalty for dealing in cocaine constitutes cruel and unusual punishment.

(4) Whether Defendant's conviction is the result of police entrapment.

(5) Whether the trial court erred in excluding corroborative testimony.

The evidence most favorable to the State discloses that on January 9, 1980 Defendant sold cocaine to an undercover police officer.

### ISSUE I

The information filed in this cause reads as follows:

" * * * on or about the 9th day of January A.D., 1980 at said County and State as affiant verily believes did knowingly deliver to Douglas Sheets a Narcotic Drug classified in Schedule II of Indiana Code 35–48–2, to wit: Cocaine, of aggregate weight of more than ten (10) grams all in violation of I.C. 35–48–1–1 and I.C. 35–48–4–1(1)."

After Defendant was arraigned, the State moved to amend the information to read as follows:

" * * * on or about the 9th day of January A.D., 1980 at said County and State as affiant verily believes did knowingly deliver to Douglas Sheets a *Controlled Substance* classified in Schedule II of Indiana Code 35–48–2, to wit: Cocaine, of aggregate weight of more than *three (3)* grams all in violation of I.C. 35–48–1–1 and I.C. 35–48–4–1(1)." (Emphasis added).

The trial court granted the motion over Defendant's timely objection.

Defendant contends that the trial court violated Ind.Code § 35–3.1–1–5 (Burns 1979) in two respects. He notes that a change in the information, which renders a defense to the original information unavailable under the amended information, affects his substantial rights. Ind.Code § 35–3.1–1–5(a)(9); (c); *Johnson v. State*, (1972) 258 Ind. 383, 387, 281 N.E.2d 473, 476. He argues that a "narcotic drug" as defined in Ind.Code § 35–48–1–1 (Burns 1979) does not include cocaine and therefore, that he lost the defense that the substance he delivered was not a narcotic drug as charged in the information.

However, the State is not required to show that cocaine is a narcotic drug, as the statute prohibits the delivery of cocaine as well as narcotic drugs, *see Hall v. State*, (1980) Ind., 403 N.E.2d 1382, 1389; and the addition of the term "narcotic drug" was mere surplusage, which was not detrimental to the defense. *Doss v. State*, (1971) 256 Ind. 174, 179, 267 N.E.2d 385, 388.

Defendant also argues that the amendment violated Ind.Code § 35–3.1–1–5(e) because the original information did not state an offense with sufficient certainty:

"The defendant therefore was charged with two offenses, delivery of a narcotic drug and delivery of cocaine, or it was impossible to tell which offense he was charged with, if any."

We do not agree. The gravamen of the offense charged is the delivery of cocaine in the amount of three grams or more. Both before and after the amendment Defendant was charged with the delivery of cocaine in the amount of three

grams or more. The amendment did not alter the potential penalty, the offense charged, or the available defenses, and the trial court committed no error in allowing it. *See Utterback v. State,* (1974) 261 Ind. 685, 689, 310 N.E.2d 552, 554; *Kolb v. State,* (1972) 258 Ind. 469, 473, 282 N.E.2d 541, 544; *Dudley v. State,* (1970) 255 Ind. 176, 178, 263 N.E.2d 161, 162.

## ISSUE II

On February 1, 1980, Defendant moved for a change of judge. Judge Miller appointed a panel consisting of the Honorable Andrew Jacobs, Sr., the Honorable Steve C. Bach, and Maurice C. O'Connor, Master Commissioner of the Vanderburgh Circuit Court. The parties struck and Special Judge Jacobs assumed jurisdiction of the case. On February 12, 1980 Special Judge Jacobs entered the following order:

"Counsel will file, and notify the Special Judge, of any request for any ruling which could possibly affect the trial date no later than February 25, 1980."

Thereafter Defendant made several pretrial motions upon some of which the trial court made adverse rulings. The trial court also ruled adversely with respect to the State's motion to amend the information discussed in Issue I.

On April 28, 1980 defense counsel withdrew, and new counsel entered their appearances, and moved the trial judge to disqualify himself and to remand the case to the regular judge in order to name a proper panel of persons qualified to serve as special judge. Defendant contended that under Ind.R.Crim.P. 13(2) Maurice O'Connor, Master Commissioner of the Vanderburgh Circuit Court, was by virtue of the rule and the office he held, ineligible to serve as special judge. Defendant repeated this contention prior to trial as part of his "Objections To Being Placed On Trial." The trial court overruled both the motion and the objections.

Ind.R.Crim.P. 13(2) provides:

"Any regular judge of a circuit, superior, criminal, probate or juvenile court and any member of the bar in this state shall be eligible for appointment in any of such courts as a special judge in any case pending in which he has not sat as judge or been named on a previous panel, unless he is disqualified by interest or relationship or is then serving as bailiff, reporter, probate commissioner, referee, or other such appointed official of the court in which the case is pending. In courts other than those named, a special judge shall be selected from judges of courts having the same or similar jurisdiction or from members of the bar."

Defendant argues that since Mr. O'Connor was not eligible to serve as special judge under Criminal Rule 13(2), the trial court should have remanded the case to the regular judge to appoint a panel of three persons eligible to serve. Defendant cites *Shaw v. State,* (1978) Ind.App., 381 N.E.2d 883 where the court recognized that a defendant must make a timely objection to the process used to select a special judge. *Id.* at 885. We recognized this principle in *Gears v. State,* (1932) 203 Ind. 400, 180 N.E. 592 where we stated:

"Instead of naming Mr. McDonald as special judge, the regular judge should have nominated three competent and disinterested persons and submitted their names to the prosecuting attorney and defendant for striking. (citation omitted). The method of selecting the special judge was irregular, and, if the defendant had objected and asked that the regular judge submit a list of three competent and disinterested persons, it would have been reversible error to have refused his request. But defendant made no objection to Mr. McDonald's appointment and recognized his jurisdiction by appearing and making a motion to quash, a verified motion for change of venue from the county and an oral motion for continuance. We see no reason why a defendant may not waive an irregularity in the method of taking a change of venue from the regular judge, or in the manner of selecting a special judge, if he should choose to do so with full knowledge of the extent and nature of the irregularity." *Id.* at 405, 180 N.E.2d at 593–94.

Assuming, *arguendo*, that the panel did not comply with Criminal Rule 13(2), the defendant's objections, though pretrial, came after he had, without protest, participated in the selection and had submitted himself to the jurisdiction of the special judge by obtaining rulings upon his motions. Upon this record, Defendant must be held to have acquiesced in any irregularity in the selection of the special judge.

### ISSUE III

Defendant next contends that the inclusion of cocaine in the same statutory classification as more dangerous drugs violates the Due Process and Equal Protection guarantees of the State and Federal Constitutions. He also contends that the sentence for possession or distribution of cocaine constitutes Cruel and Unusual Punishment in violation of the State and Federal Constitutions.

Defendant acknowledges that we answered these issues in the negative in *Hall v. State*, (1980) Ind., 403 N.E.2d 1382, 1384–89, but raises them in order to preserve them for federal review and to urge us to reconsider our position. We decline to do so.

With respect to the Eighth Amendment Cruel and Unusual Punishment claim, our position is buttressed by the recent decision in *Hutto v. Davis*, (1982) —— U.S. ——, 102 S.Ct. 703, 70 L.Ed.2d 556, (per curiam), where the Court upon the authority of *Rummel v. Estelle*, (1980) 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382, reversed the granting of habeas corpus relief upon the grounds that the sentence constituted Cruel and Unusual Punishment. The defendant had been sentenced to consecutive terms of twenty (20) years imprisonment and a $10,-000 fine upon a count of possession with intent to distribute marijuana and a count of distribution of marijuana.

### ISSUE IV

Defendant contends that his conviction is the result of entrapment by the police and their agents.

The defense of entrapment is governed by Ind.Code § 35–41–3–9 (Burns 1979) which provides:

"(a) It is a defense that: (1) The prohibited conduct of the person was the product of a law-enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and (2) The person was not predisposed to commit the offense.

"(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment."

When the defense of entrapment has been raised, the successful prosecution of the case depends upon whether the State proves that the prohibited conduct of the accused was not the product of the efforts of the law enforcement official(s) and/or agent(s) involved or that the accused was predisposed to engage in such conduct anyway. *Williams v. State*, (1980) Ind., 412 N.E.2d 1211, 1214–15. Defendant argues as follows:

"Therefore, even though evidence may exist showing the defendant's predisposition to deliver small amounts of cocaine, there is no evidence showing that he was in any way predisposed or even able to deliver quantities constituting a Class A felony prior to the urging and involvement of the police and their agents."

Whether Defendant was entrapped was a question for the jury. On appeal, we review this issue using the same standard that we apply to other challenges to the sufficiency of the evidence. *Williams v. State*, (1980) Ind., 409 N.E.2d 571, 574.

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. (citation omitted). In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses."

*Loyd v. State,* (1980) Ind., 398 N.E.2d 1260, 1264, *cert. denied,* (1980) 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

Defendant's argument disregards the evidence favorable to the verdict.

One Dan Smith, an undercover informant and admitted drug user, testified that he had purchased cocaine from Defendant prior to becoming a police informant. In the summer of 1979 Smith and one, Fentris, went to Defendant's home and purchased "narcotics." Smith charged his purchase on a line of credit that he maintained with Defendant for the purpose of buying narcotics.

The evidence also discloses that the January 9, 1980 transaction was the culmination of a series of cocaine purchases made by Sergeant Sheets, an undercover officer. Sheets testified that at Defendant's home he had purchased two (2) grams of cocaine on November 20, 1979, two (2) grams on November 27, 1979, and three (3) grams on January 3, 1980. Sheets related the January 3, 1980 transaction:

"Q. What conversation took place on the 3rd relating to the purchase of 3 ounces of cocaine from the defendant?

"A. After I had purchased State's Exhibit 16 I asked Mr. Marts if it was possible to get two or three ounces of cocaine later in the week and he told me that he didn't see any problem that he would just have to contact his people."

The deal was arranged for consummation on January 7, 1980; however, Defendant did not complete the sale, because he was wary of the circumstances. Sheets telephoned Defendant on January 8, 1980 and while trying to allay Defendant's fears that someone named "Dan", referring to informant Smith, had been working for the police, Sheets stated:

"Uh, Uh, you know, if you wanna do it, fine. If you don't wanna do it, hey, that's fine. I got the bucks. I can find somebody up in Indianapolis. The only reason I been comin' down there is 'cause that's the best stuff I've ever seen."

This excerpt appears in State's Exhibit No. 18, which is a transcription of the tape recording of that phone conversation.

Sheets again talked with Defendant by phone on January 9, 1980. The transcription of the tape recording of this conversation reveals that Sheets and Defendant could not agree on where to meet in Evansville after Sheets had learned that no rooms were available at the Ramada Inn, the place upon which they had agreed. The transcription contains the following:

"SHEETS: Uh-uh. What you suggest? I mean, I'm not going to move here with the money.

"MARTS: Yeah, hu-h-h, but you've got everything there to test and weigh?

"SHEETS: You got it. It's sitting right here on the table waiting on you.

"MARTS: Alright. Well, I'll hafta trust you, I suppose.

"SHEETS: Okay, I mean, I'd more than gladly come up to your place but, you know, what you heard was the whores, maybe, but, you know, you and I don't know that for a fact.

"MARTS: Yeah, Well, that's why I was suggesting another place.

"SHEETS: Well, this place, this is where I got the money, this is where I'm gonna stay. I'm just not gonna run around with it like I did the other night and . . .

"MARTS: Uh-uh. Alright. Hu-m-m-m. I'm thinking right now, man. I guess I'll hafta come out there.

"SHEETS: Okay, uh, you got a time or—'cause I just ain't answering the door to anybody.

"MARTS: Yeah, okay, well, uh, be about forty minutes." (R. at 375)

This record contains ample evidence from which the jury could find, beyond a reasonable doubt, that Defendant was predisposed to sell three ounces of cocaine to Sergeant Sheets on January 9, 1980. *Stewart v. State,* (1979) Ind., 390 N.E.2d 1018, 1021; *Cyrus v. State,* (1978) 269 Ind. 461, 464–65, 381 N.E.2d 472, 474, *cert. denied,* (1979) 441 U.S. 935, 99 S.Ct. 2058, 60

L.Ed.2d 664; *Silva v. State*, (1980) Ind.App., 410 N.E.2d 1342, 1344–45.

### ISSUE V

Defendant had presented a defense of duress and had testified that he had been attacked by an unidentified assailant with a rifle but had succeeded in repelling him and had sustained a slight injury in the struggle with him. Subsequently, he offered the testimony of his witness to the effect that he had told the witness of the attack and had displayed his wound to him. The court permitted the witness to testify that he had conversed with the defendant upon the occasion, and that Defendant had displayed the wound and appeared to be very disturbed. However, he sustained an objection, premised upon hearsay, to the witness' relating what the defendant had told him upon that occasion.

It is the defendant's argument that the rejected testimony was admissible under the *Patterson* exception to the hearsay rule and that he was harmed in that he was denied the benefit of testimony which corroborated his own, citing *Espenlaub v. State*, (1936) 210 Ind. 687, 2 N.E.2d 979, *appeal dismissed*, (1937) 301 U.S. 665, 57 S.Ct. 791, 81 L.Ed. 1331.

It is unnecessary for us to determine the validity of Defendant's "Patterson" argument. The witness' testimony that Defendant appeared disturbed and had a slight injury was corroborative of Defendant's testimony, and it was admitted. Only the self-serving declarations of the defendant were rejected. Self-serving declarations are generally not admissible. *Keener School Township et al. v. Eudaly*, (1931) 93 Ind.App. 627, 175 N.E. 363; *Wilson v. Reynolds*, (1938) 213 Ind. 436, 13 N.E.2d 218. An obvious reason for the rule is that a litigant should not be permitted to enhance his credibility by such method.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.