RAYMOND A. MERRY *v.* STATE OF INDIANA.

[No. 2-774A184.  Filed October 7, 1975. Rehearing denied November 20, 1975. Transfer denied April 28, 1976.]

200

*Donald D. Chiapetta,* of Muncie, *Dale Hunt,* of Portland, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert M. Lingenfelter,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant Raymond Merry appeals from his conviction for incest, IC 1971, 35-1-82-1, Ind. Ann. Stat. § 10-4206, (Burns 1956), for which he was sentenced to an indeterminate sentence of two to twenty-one years.

The information, as amended, charged Merry with the crime of incest occurring over a time span of from December 5, 1970, to September 5, 1973.

## FACTS:

The facts most favorable to the State are: J.A.M. testified as to having sexual intercourse with Raymond Merry. Bernice Merry testified that she and Raymond Merry were married on July 1, 1956. Bernice Merry further testified that on August 17, 1958, her oldest child, J.A.M. was born. J.A.M. testified that as long as she could remember, she had resided with the defendant, Raymond Merry.

At trial, J.A.M. testified that Raymond Merry told her not to tell anybody else about their little secret because if her Mom or anyone else found out, they would call the police and that would leave him in jail. Additionally, after a family argument, he again reminded J.A.M. not to divulge their secret.

Raymond Merry also exercised parental control over the children, as was evidenced by his disciplining J.A.M., living in the same house with J.A.M. and her brother and sister, and living with Bernice Merry, his wife.

The jury determined that all the elements of the offense of incest had been proven beyond a reasonable doubt and convicted Merry of the offense. After Merry's motion to correct errors was overruled, appeal was sought to this court.

## ISSUES PRESENTED:

Defendant Merry raises 26 errors in his appeal, but we have determined that the enumerated errors present the following ten general issues for our review:

1. Whether the defendant was denied representation of counsel at the hearing to determine whether probable cause existed to issue an arrest warrant.

2. Whether the trial court erred in overruling defendant's motion to dismiss the information because it did not sufficiently inform the defendant of the charge against him and subsequently erred in allowing the State to amend the information.

3. Whether the trial court abused its discretion.

4. Whether the jury was properly admonished.

5. Whether the wife could be a competent witness against her husband.

6. Whether the trial court erred in allowing evidence of prior acts of indecent familiarity to be admitted into evidence.

7. Whether the trial court erroneously admitted hearsay evidence.

8. Whether the trial court erred in refusing to direct the verdict for insufficient evidence on an essential element, or failed to dismiss because of lack of confrontation with the accusers of the defendant.

9. Whether the trial court properly instructed the jury.

10. Whether the trial court committed reversible error in failing to immediately transcribe the evidence to the record and in denying the motion to correct errors for jury misconduct.

## ISSUE I:

Merry contends that he was denied representation of counsel at the preliminary hearing for the probable cause arrest warrant. He claims that the denial of counsel at this critical stage effectively denied him assistance of counsel as required by the United States Constitution and *Coleman* v. *Alabama* (1970), 399 U.S. 1.

In *Coleman,* the United States Supreme Court determined that the Alabama preliminary hearing was a critical stage of the proceedings and so required that counsel be present. The Supreme Court of Indiana in *Monroe* v. *State* (1961), 242 Ind. 14, 175 N.E.2d 692, had previous to *Coleman* declared that a criminal defendant was entitled to counsel at the time proceedings were initiated against him. Subsequent to *Coleman,* the courts have proclaimed that a criminal defendant is entitled to counsel only *after* formal proceedings have been initiated against him. *Kirby* v. *Illinois* (1972), 406 U.S. 682; *McGowan* v. *State* (1973), 156 Ind. App. 344, 296 N.E.2d 667.

Formal proceedings had not yet been initiated against Merry in the preliminary hearing to determine probable cause for the issuance of an arrest warrant. During the preliminary hearing for probable cause, the defendant had not yet been arrested. Therefore, until the defendant had actually been arrested, no critical stage of the proceeding had arisen which entitled the defendant to representation of counsel. One cannot demand representation by counsel before the State has initiated any action against him.

## ISSUE II:

Defendant Merry has presented to this court several arguments involving the information which he believes should entitle him to a reversal. Merry contends the original information was insufficient to adequately inform him of the charges against him because it alleged numerous acts over an extended period of time which did not parallel the form as set out in the statute. Subsequently, the State sought to amend the information by deleting the words "upon several and numerous occasions." Merry contends the granting of the State's motion to amend the information was error since the original information was legally insufficient and could not be amended and the information as amended changed the theory on which the prosecution was based.

The form of the indictment or information must substantially comply with the form delineated in the statute. IC 1971, 35-3.1-1-2 (e) (Burns Code Ed.). If the accused is specifically informed of the charge against him by the wording of a particular information or indictment, then the information or indictment substantially complies with the statute. *Dorsey* v. *State* (1970), 254 Ind. 409, 260 N.E.2d 800; *Carter* v. *State* (1973), 158 Ind. App. 27, 301 N.E.2d 524; *Noel* v. *State* (1973), 157 Ind. App. 338, 300 N.E.2d 132. As we stated in *Layne* v. *State* (1975), 164 Ind. App. 486, 329 N.E.2d 612:

"Affidavits need only be so certain and particular as to enable a court or jury to understand what is to be tried and to fully inform the defendant of the particular charge he is required to meet so that he may prepare an adequate defense." 329 N.E.2d at 616.

The disputed portion of the information in this particular case related:

"That Raymond A. Merry, late of said County and State, on or about the fifth day of December, 1970, to on or about the fifth day of September, 1973, at and in the County of Jay, State of Indiana, did upon several and numerous occasions, then and there unlawfully, feloniously and incestuously have sexual intercourse with [J.A.M.], being then and there the minor daughter of said Raymond Merry, and the said Raymond Merry then and there well knowing that said [J.A.M.] was his daughter . . ."

The information sufficiently notified Merry of the charge against him, that is, that he had had incestuous intercourse with his daughter knowing of the father-daughter relationship. Consequently, the original information did sufficiently inform the defendant of the charges against him.

Merry asserts that the information was too indefinite because it only alleged that the crime was committed sometime within a specific three-year period rather than alleging that it occurred on any one specific date. He quotes the statute as requiring that the information state "the time and place of the crime with sufficient particularity . . ." However, if the statute is properly quoted, such a construction is patently unreasonable. IC 1971, 35-3.1-1-2 (a) provides:

"The indictment or information shall be in writing and allege the commission of a crime by:

\* \* \*

(5) *Stating the time and place of the crime with sufficient particularity to show that the offense was committed within the statute of limitations* applicable to such offense and was committed within the jurisdiction of the court where the charge is to be filed except that the time or place of the offense shall be stated as definitely as can be done

where either time or place is of the essence of the offense; . . ." (Our emphasis.)

As to the propriety of allowing the State to amend the information, amendment of an information or indictment is not without restraint, but must conform to the statute, IC 1971, 35-3.1-1-5 (Burns Code Ed.), which states, in part, that:

"(c) Upon motion of the prosecutor, the court [may] at anytime before, during or after the trial permit an amendment to the indictment or information in respect of any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant.

\* \* \*

"(e) Notwithstanding any other provision in this section, an indictment or information *shall not be amended in any respect which changes the theory or theories of the prosecution as originally stated,* or changes the identity of the crime charged; nor may an indictment or information be amended after arraignment for the purpose of procuring a *failure to charge or state a crime or legal insufficiency of the factual allegations.*" (Our emphasis.)

The test to determine whether the amendment is one of form or substance was set out in *Johnson* v. *State* (1972), 258 Ind. 383, 387, 281 N.E.2d 473, 476, where it was stated:

"[I]t has been held that if the defense under the affidavit as it originally stood would be equally available after the amendment is made, and if any evidence the accused might have would be equally applicable to the affidavit in one form as in the other, the amendment is one of form and not of substance. *Smith* v. *State* (1969), 252 Ind. 148, 246 N.E.2d 765; *State ex rel. Kaufman* v. *Gould* (1951), 229 Ind. 288, 98 N.E.2d 184. Also see, 42 C.J.S. *Indictments and Informations,* § 240, p. 1250."

The amendment to the information deleting the words "upon several and numerous occasions" was not a change in substance of the information. The offense charged and the time period involved did not change. Any evidence the accused might have used in defending

against the original information would be equally applicable to the information in its amended form. Therefore, in compliance with the test as set out in *Johnson* v. *State, supra,* the amendment was one of form, not substance.

## ISSUE III:

Merry has posited several instances where he believes the trial court abused its discretion. Merry contends the court erred when it refused a continuance after he had submitted an affidavit in support of his reasons, after the State had failed to comply with an order to produce, and after the State had amended the information. He further contends the granting of an overnight continuance was not enough time to adequately prepare an argument against the motion seeking amendment of the information, thus effectively denying him assistance of counsel. Merry also contends the court abused its discretion when it refused to allow him to ask prospective jurors particular questions on voir dire, allowed repetitious questions, altered the order of proof, allowed a leading question, and refused to allow him to test the memory of the State's chief witness.

Generally, whether the trial court has proceeded correctly in determining issues within its discretion is reviewable by this court, but will not be reversed unless abuse has been demonstrated. *Jessup* v. *Werner Transportation Co.* (1970), 147 Ind. App. 408, 261 N.E.2d 598. The court has abused its discretion only if the court makes an erroneous conclusion that is clearly against logic and the natural inferences to be drawn therefrom. *Dunbar* v. *Dunbar* (1969), 145 Ind. App. 479, 251 N.E.2d 468.

First, considering the continuances refused and the short continuance allowed, this court has consistently held that where a continuance is not based on statutory grounds, a continuance will be granted only to further justice upon a showing of good cause. *Brad-*

*berry* v. *State* (1975), 164 Ind. App. 360, 328 N.E.2d 472; *Stock* v. *State* (1974), 162 Ind. App. 461, 319 N.E.2d 871; *Keel* v. *State* (1974), 160 Ind. App. 707, 313 N.E.2d 711. Determining whether good cause has been shown is largely a matter within the sound discretion of the trial court. As with the general rule regarding discretionary matters, an error may only be used as a basis for reversal when the court has abused its discretion. *Swartzell* v. *Herrin* (1969), 144 Ind. App. 611, 248 N.E.2d 38. A delay in the proceeding is not for good cause when through the defendant's own neglect he has inadequate time to prepare. *Dockery* v. *State* (1974), 161 Ind. App. 681, 317 N.E.2d 453.

In applying the standard of review for discretionary matters relating to continuances to the particular instances in this case, we conclude that there has been no abuse of discretion. Although Merry's counsel submitted an affidavit in support of his desire for continuance, the "press of business," in conjunction with the three months Merry's counsel had to prepare for the particular case, is not good cause to grant a continuance, nor is the refusal to continue prejudicial. We agree with Merry that pre-trial discovery is an important aspect of any defense, *Johns* v. *State* (1968), 251 Ind. 172, 240 N.E.2d 60, but a continuance would not be warranted where three days remain before the trial, counsel had over three months to seek compliance with the order to produce, and counsel only sought the action after a prior separate motion for a continuance had been denied. These actions would indicate the materials sought were not so necessary that the absence, due to the noncompliance with the order to produce, was prejudicial. *See: Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738 (where the prosecution was allowed to add names to the witness list on the morning of trial). Additionally, the court properly refused to grant a continuance after amending the information, since the information was amended only as to form and not substance,

thereby requiring no additional time to prepare for trial. *Kolb* v. *State* (1972), 258 Ind. 469, 282 N.E.2d 541. Finally, the defendant sought and the court granted an overnight continuance to prepare arguments against amending the information; however, we need not determine whether the amount of time granted was sufficient, inasmuch as the defendant has not demonstrated how he was prejudiced by the short continuance. Therefore, we must conclude that the court did not abuse its discretion in refusing to grant the continuances or in granting the short continuance.

The extent of voir dire examination of the jurors may be restricted by the trial court to testing the capacity and the competency of prospective jurors. *Garrett* v. *State* (1953), 157 Ind. App. 426, 300 N.E.2d 696. In this respect, the trial court must be mindful that jurors are to be examined to eliminate bias, not to condition them to be receptive to the particular questioner's position. *Robinson* v. *State* (1973), 260 Ind. 517, 297 N.E.2d 409. Asking prospective jurors to review testimony of an adolescent witness with special caution was for the purpose of conditioning them to the questioner's particular position, not to determine their impartiality. Therefore, the asking of such a question was improper and it was not error for the trial court to refuse to allow such a question.

As to the repetitious questions, order of proof, leading questions, and testing a witness's memory, these are also governed by the general standard of abuse of discretion. In this respect, the court will not interfere with the trial court's discretion as to the scope of examination of the witness' memory, *Ringham* v. *State* (1974), 261 Ind. 628, 308 N.E.2d 863; *Webster* v. *State* (1973), 155 Ind. App. 510, 293 N.E.2d 529, the order of proof in a particular trial, *Waugaman* v. *Gary Methodist Hospital of Gary, Inc.* (1972), 151 Ind. App. 279, 279 N.E.2d 240, the questioning of witnesses in allowing leading questions, *Bayer* v. *State* (1973),

158 Ind. App. 531, 303 N.E.2d 678; *Shipman* v. *State* (1962), 243 Ind. 245, 183 N.E.2d 823, or in allowing a question to be repeated, *Shuemak* v. *State* (1970), 254 Ind. 117, 258 N.E.2d 158.

In the case at bar, the defendant has simply asserted that a repetitious question was allowed and the order of proof was varied, but contrary to the general rule governing abuse of discretion, defendant has not shown any prejudice by these actions. Similarly, in examining the State's chief witness, the court determined that a question was not leading, since the question did not suggest the answer. *Brown* v. *State* (1939), 216 Ind. 106, 23 N.E.2d 267. Finally, the extent of cross examination as to testing the memory and capacity of the witness is generally liberal, but when repeated questioning of a witness as to irrelevant issues occurs, the court may properly act to prohibit such question and has not abused its discretion. Defendant had repeatedly questioned the State's chief witness concerning her sexual relations with boyfriends. However, since the morality of the witness in a prosecution for incest is not an issue, *infra,* the court did not err in refusing to allow the defendant to continue that particular line of questioning.

In summary, all of the instances which defendant has forwarded to this court were either not errors by the trial court or were not prejudicial; therefore, the court did not abuse its discretion.

### ISSUE IV:

Defendant Merry contends the jury was not properly admonished when the court instructed the jury to abstain from improper conduct. The State correctly contends that the defendant did not object to the admonishments. Therefore, Merry may not raise the issue for the first time on appeal. *Raisor* v. *Kelly* (1972), 152 Ind. App. 198, 282 N.E.2d 871.

During each adjournment during trial, the court is required by statute to make sure that:

". . . [A]fter being impaneled, and at each adjournment, they must be admonished by the court that it is their duty not to converse among themselves, nor suffer others to converse with them, on any subject connected with the trial, or to form or express any opinion thereon, until the cause is finally submitted to them." IC 1971, 35-1-37-2 (Burns Code Ed.)

However, failure to so instruct does not necessarily mean defendant was harmed; it is incumbent on the defendant to show prejudice by the failure to admonish. *Brown* v. *State* (1964), 245 Ind. 604, 201 N.E.2d 281. In fact, unless the record disclosed that there was no admonishment, it is presumed the trial court followed the statute in giving the customary admonition to the jury. *Baker* v. *State* (1973), 260 Ind. 618, 298 N.E.2d 445. Thus, even if the admonishment given here was inadequate, it would not be cause for reversal, inasmuch as Merry has not shown how he was prejudiced by the alleged error.

## ISSUE V:

Defendant Merry contends that since he was not a competent witness for the State, the marital privilege prohibits the wife from being a competent witness for the State also. In this respect, Merry has cited this court to two statutes which he alleges, when construed with the constitutional prohibition against self-incrimination exclude the wife. The statutes are:

"The following persons are competent witnesses:
1. All persons who are competent to testify in civil actions.

\* \* \*

4. The defendant to testify in his own behalf . . ." IC 1971, 35-1-31-3 (Burns Code Ed.)
"When the husband or wife is a party, and not a competent witness in his or her own behalf, the other shall also be excluded, except that the husband shall be a competent witness in a suit for the seduction of the wife, but she shall not be competent." IC 1971, 34-1-14-9 (Burns Code Ed.)

By statute, the rules of evidence applicable in civil cases apply as well to criminal cases unless excepted by statute. IC 1971, 35-1-31-2 (Burns Code Ed.). Although at common law the wife was adjudged to be an incompetent witness against her husband, Indiana has by statute modified the common law and has determined a spouse to be incompetent only as to communications made to the spouse. IC 1971, 34-1-14-5 (Burns Code Ed.). Similarly, case law has reiterated this concept concluding that the statute prohibiting the wife from disclosing communications does not make the wife incompetent to testify against her husband. *Dwigans* v. *State* (1944), 222 Ind. 434, 54 N.E.2d 100.

Merry's assertion that his wife is incompetent to testify is actually an assertion of the marital privilege of confidential communications. *Shepherd* v. *State* (1971), 257 Ind. 229, 277 N.E.2d 165.

Both Merry and his wife are competent witnesses. While Merry may assert his privilege against self-incrimination, such assertion does not make him incompetent. Likewise, he may assert the marital privilege for confidential communications, but that does not affect the competency of the marital partner to testify to matters that are not so privileged. Here, Merry did not assert any privilege as to confidential communications made to his wife, but rather based his challenge solely on the competency of the witness to testify. Bernice Merry was clearly competent.

In any case, it is well settled that the marital privilege is restricted to confidential communications and information gained by reason of the marital relationship. *Shepherd* v. *State, supra.* None of the testimony objected to here consisted of confidential communications or information gained by reason of the marital relationship. Thus, even if the marital privilege had been asserted here, rather than the incompetency of the witness, there still would be no basis for the exclusion of her testimony.

## ISSUE VI:

Merry contends the court erred by denying him due process of law because it admitted into evidence prior acts of indecent familiarity with the State's witnesses, J.A.M. and B.J.M., and subsequently denied defendant Merry's motion to strike and his motion for mistrial. Merry contends the rule allowing evidence of prior sex offenses to be admitted into evidence is contrary to the general rule against admitting only prior convictions unless the evidence falls within the exceptions of common plan or scheme, intent, motive, purpose or identification. Additionally, he claims that even if the rule allowing evidence of prior sex offenses to be admitted is upheld, the application in this particular case was incorrect because one of the acts of indecent familiarity with J.A.M. did not involve actual sexual intercourse.

The admission of evidence is not a matter of judicial grace, but a matter of legal right; however, evidence admitted must logically tend to prove a material fact or it is erroneously admitted. *Lawrence* v. *State* (1972), 259 Ind. 306, 286 N.E.2d 830. Generally, evidence of other crimes is inadmissible unless the evidence is relevant for some purpose other than to show a probability that the defendant committed the crime on trial. *Franks* v. *State* (1975), 262 Ind. 649, 323 N.E.2d 221; *See: Thomas* v. *State* (1975), 263 Ind. 198, 328 N.E.2d 212; *Jones* v. *State* (1975), 163 Ind. App. 454, 324 N.E.2d 828.

We have extensively examined the Indiana rule that allows evidence of illicit intercourse to be admitted without demonstrating a common plan or scheme, intent, motive, purpose or identification. Such a rule was presented in the early case of *State* v. *Markins* (1882), 95 Ind. 464, where the court announced that prior acts of illicit intercourse would be considered evidence of the accused's disposition to indulge in such illegal conduct. Subsequently, our courts extended the *Markins* decision, holding that prior acts of illicit intercourse are ad-

missible without meeting the exception to the general rule, even if the illicit acts were not accomplished with the prosecuting witness but with another person who was coerced into committing a similar illicit act. *Lamar* v. *State* (1964), 245 Ind. 104, 195 N.E.2d 98; *Estes* v. *State* (1964), 244 Ind. 691, 195 N.E.2d 471. In *Ward* v. *State* (1965), 246 Ind. 374, 384, 205 N.E.2d 148, 154, the Supreme Court was able to state that ". . . the law is well settled that evidence regarding other sex offenses similar to that charged is admissible."

Abruptly, in *Meeks* v. *State* (1968), 249 Ind. 659, 234 N.E.2d 629, the court declared that *Larmar, supra,* proceeded too far and did not fit within any of the exceptions to the general rule excluding prior offenses. There, in a rape trial, where consent was the only issue, the court determined it was error to admit prior rape accusations where the act of intercourse itself was disputed in the prior acts but was not an issue in the present trial. One month later, the Supreme Court of Indiana was prompted to distinguish the rape decision, stating:

> "In *Lovely* v. *United States* . . . it was noted that while evidence of similar offenses closely related in time and place may be relevant on such matters as identity, guilty knowledge, motive or intent, where these are in issue, or may tend to establish a criminal plan or design out of which the crime charged has originated, it is well settled, that such evidence is *not* admissible where it has no other relevance or probative force other than to show a tendency or likelihood on the part of the accused to commit the crime *except in prosecutions for crime involving a depraved sexual instinct . . .*" *Woods* v. *State* (1968), 250 Ind. 132, 143, 235 N.E.2d 479, 486. (Original emphasis.)

Subsequently, the Supreme Court of Indiana, in *Lawrence* v. *State, supra,* in referring to the general rule excluding prior convictions if they are irrelevant or their sole relevance shows that defendant's general character is bad, thereby inferring that he has a tendency to commit crimes, determined that prior sex convictions should be excluded as being irrelevant where

the present charge was safe burglary. However, when the prior convictions are relevant to the issues presented, although a tendency to prejudice remains, the overriding interest of the State in arriving at the truth should prevail and the similar actions should be admitted.

Our Supreme Court, in *Austin* v. *State* (1974), 262 Ind. 529, 319 N.E.2d 130, a prosecution for sodomy, rape and kidnapping, declined to follow the *Meeks* decision, distinguishing it as having been involved only with the issue of consent. Instead, the court chose to follow the reasoning of the cases that began with *Robbins* v. *State* (1943), 221 Ind. 125, 46 N.E.2d 691, where the court had stated that the general rule excluding prior crimes did not apply where the chief element of the offense is illicit intercourse between the sexes, only excluding the prior crimes when in the discretion of the trial court the offenses were too remote. The *Austin* decision was not without support, however, because in *Miller* v. *State* (1971), 256 Ind. 296, 268 N.E.2d 299, the court had previously distinguished the *Meeks* case on the same basis that it applied only to rape cases where consent was the only disputed issue.

Finally, in *Thompson* v. *State* (1974), 162 Ind. App. 381, 319 N.E.2d 670, this court determined that prior offenses would be admissible even in a prosecution for rape when consent was the only issue *if* there was proximity in time and place of these occurrences to show the common scheme, design or plan. However, the gist of the action was to restrict the *Meeks* decision to rape cases where consent was the issue, thereby implying that in other illicit sex prosecutions, evidence of prior crimes involving illicit sex should be admitted.

The State presented evidence of prior crimes of indecent familiarity with the prosecuting witness. J.A.M. at the time she testified was fifteen years old and in the tenth grade in school. She related numerous instances of illicit relations beginning with the first such incident which occurred when she was in the sixth grade and concluding with the last day

mentioned in the information, such incidents having occurred as often as weekly and infrequently as once per month.

Normally, such evidence would be excluded, as being prejudicial by attempting to discredit the accused's character. However, the purpose of such evidence was not to discredit the accused's character, but to show a "depraved sexual instinct", *Woods* v. *State, supra,* thereby bolstering the probability of the occurrence.

Although the first such incident related by J.A.M. did not result in actual penetration, we conclude that a *similar* sex offense is all that is required, not a duplicate performance. Similarly, it is apparent that the similar illicit relations need not be confined to the prosecuting witness, but may include other witnesses. *See, Lamar, supra.* Consequently, we must conclude the admission into evidence of prior acts of indecent familiarity and intercourse with the prosecuting witness and her sister came within the exception to the general rule, and was not error.

## ISSUE VII:

Merry contends the trial court committed error when it allowed a witness for the State to answer the question: "What, if anything, did the wife of defendant say to you?" since the question was a request for hearsay information.

Hearsay evidence is generally inadmissible. Although evidence is inadmissible as independent evidence because it is hearsay, it may be used for impeachment. *See* 98 C.J.S., *Witness,* § 588. For purposes of impeachment, a foundation must first be laid by detailing the time and place of the statement and the person to whom it was made. *Gradison* v. *State* (1973), 260 Ind. 688, 300 N.E.2d 67. If the witness sought to be impeached effectively denies the information propounded in the foundation question, *Aikins* v. *State* (1971), 256 Ind. 671, 271 N.E.2d 418, then the opposing party is entitled to introduce testimony which is incon-

sistent with the denial of the witness sought to be impeached. *Cichos* v. *State* (1965), 246 Ind. 680, 203 N.E.2d 685, 210 N.E.2d 363.

In the case at bar, the State questioned the defendant's witness, Bernice Merry, specifically asking the following questions:

"Q. Did you not tell Jerry Cowgill and his wife, who is a sister of your husband Ray Merry, that you had seen him [Ray Merry] sneaking in and about the house at night while you were supposed to be in bed? Objection.

Mr.
Whitman: Would you fix your time on that? Are you speaking about the last time she was in the hospital or when?

Mr.
Helm: The time from September 4 to September 13.

Mr.
Whitman: All right, as long as I know the time.

Q. Did you not make that statement to them?

A. Well, from the 4th of September until the 13th I don't know what went on at home.

Q. Maybe you misunderstood the question. Did you not make the statement in substance to Jerry Cowgill and his wife while you were at the (Jay) County Hospital during the time from September 4 to September 13, 1973?

A. They weren't up to the hospital to see me.

Q. Simply state a yes or no. Yes I made the statement or no that I didn't.

A. Not during that time, No."

Having properly established the foundation and receiving a negative reply, the State was entitled in rebuttal to introduce its own evidence showing inconsistency. This the State did. In examining the impeaching witness, Martha Cowgill, the following was elicited from the witness:

"Q. Calling your attention to, on or or about the 8th day of September, 1973, do you recall about that time.

A. Yes, I do.

Q. Do you recall whether or not you had a conversation with the wife of the defendant, Mrs. Raymond Merry?

A. Yes.

Q. Do you recall where that conversation was?

A. At the Jay County Hospital.

Q. Do you recall who was present?

A. There was my husband and myself and Bernice.

Q. What if anything did the wife of the defendant herein say to you?

* * *

Q. Do you recall whether or not Mrs. Bernice Merry, the wife of the defendant, stated to you at that time that she had in fact observed her husband sneaking around at night when she was in bed?

A. Yes.

Q. Did she in fact speak that?

A. Yes.

Q. Did she state what she discovered as a result of that investigation?

A. Yes she did.

Q. What was that?

A. That she would get up and that they [Ray and J.A.M.] would hear her and she could hear footsteps of [J.A.M.] running back to the bedroom. And then Raymond would always go to the bathroom."

Having properly laid the foundation and eliciting the inconsistent testimony from the impeaching witness, it was not error for the trial court to allow the impeaching question to be asked.

It is contended that Bernice Merry did not actually deny making the statement, but simply disputed the time it was made. If such be the fact, the admission of the impeaching testimony might not be proper since it would not be a denial of the making of the statement as is required by *Aikins* v.

*State, supra.* However, the *time* of the denial was the essence of the question; therefore, the exercise of the court's discretion in allowing the impeaching testimony was not error.

## ISSUE VIII:

Merry contends the trial court erred in refusing to direct the verdict at the close of the State's case and at the conclusion of all the evidence. He alleges the State failed to prove that the defendant knew that J.A.M. was his daughter when it is alleged they had intercourse. He contends that the State's failure to present the witness who signed the affidavit was a denial of his constitutional right to confrontation of his accusers. Finally, he contends that the evidence as a whole was insufficient to support the conviction.

To enable this court to uphold the trial court's denial of a directed verdict, it is only necessary that the State present a prima facie case. *Holliday* v. *State* (1970), 254 Ind. 85, 257 N.E.2d 679. If the State fails to prove one of the essential elements of the charge, then it is incumbent upon the trial court to direct the verdict in favor of the defendant. *Birkla* v. *State* (1975), 263 Ind. 37, 323 N.E.2d 645; *Johnson* v. *State* (1975), 164 Ind. App. 12, 326 N.E.2d 637; *Smith* v. *State* (1975), 163 Ind. App. 425, 324 N.E.2d 276. Upon reviewing the verdict for insufficient evidence, this court looks at the evidence in the light most favorable to the State to determine whether substantial evidence of probative value was presented as to each element charged. *Mosby* v. *State* (1975), 164 Ind. App. 479, 329 N.E.2d 600.

The right to confront witnesses against the defendant at trial is unchallenged. However, a distinction must be made between confronting a witness at trial and confronting the affiant on the information. In *Denton* v. *State* (1965), 246 Ind. 155, 203 N.E.2d 539, our Supreme Court, in reply to the contention that the witness who

signed the affidavit was not called to testify thereby denying the defendant his constitutional right of confrontation, stated that:

".. . we know of no court decision holding it is the duty of the prosecuting attorney, engaged in the prosecution of a person charged with crime, to produce at the trial all the witnesses present at the commission of the crime. The State in fact cannot be compelled to call witnesses at the instance of the accused, but if the accused desires, in the conduct of his defense, the testimony of witnesses who are not called, he has the burden of seeing that they are called. (Citations omitted.)

"Had appellant desired, for the purposes of his defense, the testimony of Frank Lotz or any other witness not called, he had the burden of seeing such witness was called by compulsory process or otherwise. Having failed to request the attendance of such witness, he has now no cause for complaint, ..." 246 Ind. at 160, 203 N.E.2d at 541-2.

There is no penalty upon the State for refusing to call the witness who has signed the affidavit, but if that witness is called to testify *at trial*, then the defendant must be afforded the right to confront his accuser and cross-examine him. Thus, as to Merry's contention that he was denied his constitutional right to confront the witnesses against him, we must conclude that his claim is unfounded since he was afforded the right to confront all witnesses at trial. The right to confront the one who has signed the affidavit is included within the right to confront one's accusers only if the defendant availed himself of the right to compulsory process to secure the affiant's testimony.

Further, we must conclude that the denial of the directed verdict was proper since sufficient evidence was presented on every element of the charge. *See Holliday* v. *State* (1970), 254 Ind. 85, 257 N.E.2d 679. The only element of the offense which Merry has claimed was not proved was that he had had intercourse with his daughter knowing her to be his daughter. However, from the record it

is apparent that Raymond Merry was the natural father of J.A.M., she being the offspring of his marriage with Bernice Merry. Additionally, testimony at trial revealed that Raymond Merry exercised parental control over J.A.M., lived with J.A.M. and the remainder of the family, and requested J.A.M. not to tell anyone else of their incestuous intercourse. This evidence is sufficient to infer that Merry knew that J.A.M. was his daughter. Since we do not reweigh the evidence or the credibility of the witnesses, we must conclude that the denial of the directed verdict was correct. *Simpson* v. *State* (1975), 164 Ind. App. 307, 328 N.E.2d 462; *Traylor* v. *State* (1975), 164 Ind. App. 50, 326 N.E.2d 614.

The sole issue Merry contends the State failed to prove was the knowledge of the father-daughter relationship. In conjunction with the foregoing discussion, it is apparent the State did prove by circumstantial evidence that defendant knew of the father-daughter relationship. Therefore, the evidence as a whole must be considered to have substantially verified all the elements of the offense charged and there was no error in refusing to overturn the jury's verdict on the ground that it is not supported by sufficient evidence.

## ISSUE IX:

Defendant Merry contends the trial court erred in giving instructions numbered 6 and 7. In brief, instruction #6 informed the jury that the moral conduct of the prosecuting witness was not an issue in an incest case, which defendant Merry contends is not a correct statement of the law in light of the Indiana statute which allows general moral character to be given in evidence. IC 1971, 35-1-31-6 (Burns Code Ed.) As to instruction #7, Merry contends that the issue of consent was not in evidence and therefore an instruction telling the jury that they were not to consider the issue of the prosecuting witness' consent, was error. Finally, Merry contends that

the court erred in refusing his instruction #9 that would have informed the jury that an unfavorable inference should be drawn from the fact that the State failed to produce as a witness the affiant on the information.

In the early case of *Kidwell* v. *State* (1878), 63 Ind. 384, the court stated:

> "Her [the prosecuting witness] reputation for virtue and chastity was not material to the charge of incest, and the evidence was not proper to impeach her general character for truth and veracity." 63 Ind. at 385.

Many years after the *Kidwell* decision, the Legislature enacted a statute which required that:

> "In all questions affecting the credibility of a witness, his general moral character may be given in evidence." IC 1971, 35-1-31-6 (Burns Code Ed.)

The statute would seem to mandate that a witness's moral character is allowed in evidence, but further examination of the subsequent cases concerning the general moral character of the witness discloses that such is not the case. In *Barker* v. *State* (1918), 188 Ind. 263, 120 N.E. 593, the court explained:

> "The indictment in this case tendered no such issue, nor does the statute under which the indictment was drawn make previous chastity an element of the offense. The object desired by the introduction of the proposed testimony is not stated, but if the purpose of the questions to the witness was to show specific acts of sexual intercourse with other men as a defense to the charge, or as tending to show her general chastity or unchastity, or whether the sexual acts with appellant were with or without her consent, the evidence was properly excluded." (Citations omitted.)

From the cases, it is apparent that the moral character of the prosecuting witness is not an issue in an offense of this type. Instruction #6 stated:

> "You are further instructed that the virtue or moral conduct, or for that matter, the lack of virtue or lack of moral conduct of the prosecuting witness, [J.A.M.], in engaging in an act of sexual intercourse with defendant, Raymond A. Merry, if in fact you so find the State of

Indiana has proved such beyond a reasonable doubt, cannot be considered by you as a defense to the crime of incest in favor of the defendant, neither can it be even adjudged by you to be a mitigating factor in favor of the defendant, all of this to be true because of the virtue or moral conduct, or for that matter the lack of virtue or the lack of moral conduct of the prosecuting witness [J.A.M.], is not a factor at all to be considered by you in determining the guilt or innocence of the defendant in this charge of incest."

This instruction is a correct statement of the law that the virtue or lack of virtue of the prosecuting witness is not a factor for the jury to consider in an incest case. The instruction did not say that general moral character should not be considered in evaluating the credibility of the witness, but only that such moral character should not be considered as a defense to the crime or as a mitigating factor in favor of the defendant. Such an institution is proper.

As to defendant's contention that the instruction on consent was erroneous because there was no evidence presented in the trial on the question of consent, we need only refer to the record, where it was stated in cross examining J.A.M., the following:

"Q. Can you tell me what happened?
A. He had B.J.M. stay in there.

Q. Stay in where?
A. In the bedroom.

Q. Where were you at?
A. In, I don't recall where I was at.

Q. What happened?
A. He wanted to know if it was okay if he showed, he showed [B.J.M.] what it was like with me.

Q. Okay. Then what did you do?
A. I went along with him."

From this, it is apparent that testimony was received that J.A.M. had consented to the incestuous intercourse. Inasmuch

as consent is not a defense or a mitigating factor, the instruction properly informed the jury of that proscription.

Defendant's tendered instruction #9, which was refused over objection, said that the State's failure to produce the person signing the information should give rise to a presumption that any testimony he would have offered should be presumed to be against the State.

The contention was squarely met in *Mallard* v. *State* (1975), 164 Ind. App. 532, 329 N.E.2d 64, where it was stated:

> "If both the State and the defendant have equal access to a particular witness, an instruction such as the one for which Mallard now argues is properly denied." *See* also: *Denton* v. *State, supra.*

Consequently, the trial court acted correctly in refusing to give the defendant's tendered instruction.

### ISSUE X:

Defendant Merry contends that Criminal Rule 11 mandates that the entire record be transcribed when the defendant is sentenced and the court failed to do so. Additionally, Merry contends that one of the jurors was asleep during the court's instructions and has filed an affidavit alleging such error so that it may be included in the record.

Although a trial may not be free from error, every error of the trial court does not require that the case be reversed. Only when the error has caused prejudice to the defendant is there cause to reverse. The failure to transcribe the record immediately was an error, but as in *Bates* v. *State* (1971), 256 Ind. 490, 269 N.E.2d 749, unless the defendant can state the manner in which he was prejudiced, there was no reversible error. In the case at bar, the court did err in failing to transcribe the record within the prescribed time. However, defendant has not shown how this

failure to transcribe the record has resulted in prejudice to him which would cause this court to reverse.

The issue of jury misconduct in this particular case involves a sleeping juror. In *Alderman* v. *Cobb* (1884), 94 Ind. 602, where it was alleged that two jurors were asleep during the trial, the affidavit in support of that allegation was not properly made a part of the record and the court refused to consider the matter. This case is included in the discussion of inattention of jurors due to sleepiness in Annot., 88 A.L.R.2d 1275. The cases cited in that annotation seem to require a two-step approach to determine whether prejudice has resulted. First, it must be shown that the juror was actually inattentive. Second, it must be shown that the juror's action actually resulted in prejudice to the defendant.

The general rule of trial practice is that claims of error not properly called to the attention of the trial court, so that corrective action may be taken, are waived. The defendant may not observe an error in the trial, make no objection, and yet claim such error as reason for reversal. Therefore, it is incumbent upon the defendant to immediately seek corrective action or his contention is waived. *See* Annot., 88 A.L.R.2d 1275.

If the defendant is not aware of the misconduct of the juror and makes no objection, but subsequently files an affidavit alleging such error, it must be determined whether the affidavit is sufficient. The Ind. Rules of Criminal Procedure, CR. 17, makes an affidavit evidence to be used in the record. In this respect, affidavits in support of a motion to correct errors are similar to affidavits in support of any motion, as stated in Ind. Rules of Procedure, TR. 11:

"(C) *Pleadings, motions, and affidavits accompanying or in support of such pleadings or motions* when required to be verified or under oath shall be accepted as a representation that the *signer has personal knowledge* thereof or

reasonable cause to believe the existence of the facts or matters stated or alleged therein; and, *if otherwise competent* or acceptable as evidence, may be admitted as evidence of the facts or matters stated or alleged therein when it is so provided in these rules, by statute, or other law, or to the extent the writing or signature expressly purports to be made upon the signer's personal knowledge. When such pleadings, motions and affidavits are verified or under oath it shall not require other or greater proof on the part of the adverse party than if not verified or not under oath unless expressly provided otherwise by these rules, statute or other law. *Affidavits on motons for summary judgment under rule 56 and in denial of execution under rule 9.2 shall be made upon personal knowledge."*

Referring to the affidavit requirement of TR. 56(e), this court, in *Newell* v. *Standard Land Corporation* (1973), 156 Ind. App. 597, 297 N.E.2d 842 compared a hearsay affidavit to hearsay testimony and refused to admit the affidavit because it contained inadmissible hearsay.

In the case at bar, it is apparent from the affidavit submitted by Merry that he was not aware of the alleged error during the trial, nor was the affidavit based upon personal knowledge of the affiant. Pertinent portions of the affidavit of the defendant to this issue states:

"That the defendant did not learn that said juror had fallen asleep until after the verdict of the jury had been returned in open court in this cause."

It is well settled, that failure to make a timely objection when possible is a waiver; however, even if not waived, the affidavit presented by Merry is unsatisfactory in that it is not based upon the personal knowledge of the affiant. Having either waived the error or failed to properly preserve it, the defendant may not predicate reversal on this error.

In addition, Merry did not meet the second requirement of the rule in that he failed to show how he was in any way prejudiced by the allegedly inattentive juror. At no place in his brief does he allege such prejudice other than to say that the conduct of the juror "probably

prejudiced the right of the defendant to a fair trial." Such a statement is clearly insufficient for the purpose of showing prejudice. *See McClary* v. *State* (1881), 75 Ind. 260.

## CONCLUSION:

Having presented no reversible error, the judgment of the trial court is affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 335 N.E.2d 249.