The STATE of Iowa, Appellee,

v.

Robert Dean SPAULDING, Appellant.

No. 65439.

Supreme Court of Iowa.

Dec. 23, 1981.

Kjas T. Long of Gottschalk, Shinkle & Long, Waterloo, for appellant.

Thomas J. Miller, Atty. Gen., Michael Jordan, Asst. Atty. Gen., David H. Correll, Black Hawk County Attorney, James D. Coil, Asst. Black Hawk County Atty., for appellee.

HARRIS, Justice.

Defendant assigns four errors in his appeal from judgment on conviction of third-degree sexual abuse. § 709.4, The Code 1979. We find no error and affirm the trial court.

During the time in question, defendant and his wife lived together with their two natural daughters, the fifteen-year-old victim and the victim's older sister, then seventeen. On September 20, 1979, and again on September 23, 1979, while his wife was out of town, defendant had intercourse with the victim. Each occurrence was in the victim's bed. Defendant had been having sexual relations with the victim for at least five years. On September 22, defendant entered the victim's sister's bedroom and held her down on her bed while he masturbated on her abdomen.

Upon return of the mother, the seventeen-year-old sister reported what had happened. The mother took both daughters to the police station where a report was made. While there, Mrs. Spaulding spoke with the defendant by phone while a police officer listened on an extension. The arrangement was with Mrs. Spaulding's consent. Defendant knew his wife was at the police station but did not know the conversation was being monitored.

This prosecution was based solely on the two mentioned incidents with the younger sister. The mother and both sisters stated candidly they were reluctant to testify and resisted doing so. Through their own attorney, the sisters filed a motion to quash their subpoenas, offering instead the transcript of their testimony from an earlier trial which resulted in a mistrial. That motion was overruled. When the mother was called to testify both she and defendant asserted the marital privilege as a bar to her testimony.

I. Defendant's first assignment challenges the trial court ruling which required Mrs. Spaulding to testify over her own and defendant's protest. We think the ruling was correct.

■ Section 622.7, The Code 1979, provides in part: "Neither the husband nor wife shall in any case be a witness against the other except: 1. In a criminal prosecution for a crime committed one against the other . . . ." A companion section, section 622.9, protects communications between husband and wife. In *State v. Hubbs*, 268 N.W.2d 188, 190 (Iowa 1978), we approved admitting testimony of the wife of a defendant in a statutory rape case. The victim in *Hubbs* was defendant's step-daughter. Hubbs' wife, the victim's mother, was allowed to testify.

Defendant here believes *Hubbs* does not apply because Mrs. Spaulding joined in her husband's protest whereas Hubbs' wife was apparently a willing witness. But section 622.7 calls for no such distinction. And we do not believe the legislature intended that the exception for criminal prosecutions under section 622.7(1) should apply only for spouses who are willing witnesses.

Another statute also supports the trial court ruling. Section 232.74 provides:

Sections 622.7, 622.9 [previously mentioned] and 622.10 [communications in professional confidence] and any other statute or rule of evidence which excludes or makes privileged the testimony of a husband or wife against the other . . ., shall not apply to evidence regarding a child's injuries or the cause thereof in any judicial proceeding, civil or criminal, resulting from a report pursuant to this chapter or relating to the subject matter of such report.

■ Defendant seeks to avoid the effect of section 232.74 on two grounds. He first claims the section does not apply because this offense, he says, does not involve a "child's injuries" within the meaning of the section. This ground falls in the light of statutory definitions set out in the chapter in which it appears. Child abuse is defined as "harm or threatened harm occurring through . . . [t]he commission of any sexual abuse with or to a child as defined by chapter 709 . . . ." § 232.68, The Code.

■ As a second ground for resisting the effect of section 232.74 defendant argues that the State did not lay an adequate foundation to show the challenged testimony was derived "from a report made pursuant to . . . chapter [232] . . . ." We believe the record shows the contrary. Mrs. Spaulding, the victim's mother, made an oral report of the sexual abuse to the police. This was sufficient to support a finding that the report was made pursuant to chapter 232.

■ We hold the trial court correctly interpreted the legislative intent in admitting Mrs. Spaulding's testimony.

II. Defendant's second assignment challenges trial court rulings admitting the testimony of the victim, her sister, and Mrs. Spaulding which described acts of intercourse with the victim and the incident with the victim's sister. Defendant believes this testimony was inadmissible because it was of "other crimes," and fell outside any exceptions which might have allowed the testimony. *State v. Johnson*, 224 N.W.2d 617, 619 (Iowa 1974); *State v. Wright*, 191 N.W.2d 638, 640 (Iowa 1971). The objections to the testimony of the victim, and of the victim's sister, will be treated separately in the following subdivisions.

■ A. The prior acts with the victim were admissible under a generally recognized exception to the above "exclusionary rule" in order "to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial." McCormick's Handbook on the Law of Evidence, § 190 at 449 (2d Ed. E. Cleary 1972); *State v. Maestas*, 224 N.W.2d 248, 250 (Iowa 1974); *State v. Rankin*, 181 N.W.2d 169, 171 (Iowa 1970); *State v. Kinkade*, 241 Iowa 1259, 1261–62, 43 N.W.2d 736, 738 (1950); *State v. Neubauer*, 145 Iowa 337, 345–46, 124 N.W. 312, 315 (1910); Annot., 88 A.L.R.3d 12 (1978); Annot., 77 A.L.R.2d 841 (1961); Annot., 167 A.L.R. 565

(1947); *Merry v. State*, 166 Ind.App. 199, 335 N.E.2d 249, 262 (Ind.App.1975).

B. A separate question is presented on the testimony of the victim's sister. She described an act which occurred during the two-day period between the two incidents giving rise to this charge. We, and a number of courts, have held such testimony admissible as an exception to the exclusionary rule. *Maestas*, supra, 224 N.W.2d at 251–52; *Merry v. State*, 335 N.E.2d at 262; *State v. Simerly*, 463 S.W.2d 846, 848 (Mo. App.1971); *State v. Kazee*, 47 Cal.App.3d 593, 595, 121 Cal.Rptr. 221, 223 (1975); *State v. Covert*, 57 Cal.Rptr. 220, 225, 249 Cal.App.2d 81 (1967); *State v. Jackson*, 82 Ohio App. 318, 81 N.E.2d 546, 548–49 (Ohio App.1948); *State v. Edwards*, 224 N.C. 527, 528, 31 S.E.2d 516, 516 (1944); see McCormick, supra, § 190 footnote 41 at 450; Annot., 88 A.L.R.3d 12 (1978); Annot., 77 A.L. R.2d 841 (1961); Annot., 167 A.L.R. 565 (1947). Although, as has been pointed out, a number of cases admit the testimony "by forcing the evidence into the exceptions relating to design or intention," McCormick, *supra*, at 550, it is generally received in the belief "that certain unnatural sex crimes are in themselves so unusual and distinctive that any previous such acts by the accused with anyone are strongly probative of like acts upon the occasion involved in the charge . . . ." McCormick, at page 449.

There remain the separate questions of whether the evidence of each sister was more informative than it was prejudicial. Without question the level of prejudice inherent in this type of evidence is high. It is nevertheless admissible if its value in searching out the truth of the charges becomes or remains relatively higher. McCormick, *supra*, at 453–54.

The testimony of the victim was important in view of defendant's claim, based on a concession during the victim's cross-examination, that she may have dreamed the act. The victim's testimony was properly admitted.

The testimony of such acts with a person other than the immediate victim always presents a closer question. The trial court considered the matter carefully in exercising its discretion and explained:

The reasons for the court's ruling is that, taking all of the circumstances into consideration, it appeared that one or more of the bases set out in the *Johnson* case were present and that the probative value of this testimony outweighed its prejudicial effect. The court advised counsel that it would not permit testimony concerning any other acts or alleged acts between the witness and the defendant to come into evidence for the reason that such other offenses, if any, would not have been deemed to have been close enough in point of time to have sufficient probative value in this case. And the State then did not attempt to elicit testimony concerning any other acts with that witness and the defendant. The specific reasons for feeling that the evidence falls within the *Johnson* rule is that the common circumstances were present. Both the crime in question and this incident occurred in substantially the same manner; both involved daughters of the defendant; both involved the claim that the defendant came into their bedroom and woke them. . . . In both instances the mother was gone. And the incident in question occurred in between the two acts that the principal victim of the offense charged occurred. Also, as an additional reason, the court felt that [because of] victim's concession on cross-examination that it was possible . . . she dreamed the events . . . she had previously testified to (and [which] constitute the primary evidence of the offense charged), the evidence in question had an increased probative value.

The rule seems to be that the evidence of such acts are more easily admissible the closer they occurred in point of time to the act giving rise to the charge. 88 A.L.R.3d at 14. The victim's sister's testimony related an act occurring between the two involving her younger sister. It gave considerable credence to the victim's story, and tended to contradict the defendant's claim that the victim may have dreamed

the occurrence. We find no abuse of discretion in admitting the sister's testimony.

Defendant's second assignment is without merit.

 III. For his third assignment defendant challenges the sufficiency of the evidence to establish an allegation in the trial information. There are three alternative ways of proving sexual abuse in the third degree under section 709.4(4). The threshold question is whether the victim is fourteen or fifteen years of age and not cohabiting with the defendant as a spouse. If so, the crime may be perpetrated if " . . . [1] the person is a member of the same household as the other participant, [2] the person is related to the other participant by blood or affinity to the fourth degree, or [3] the person is in a position of authority over the other participant and uses this authority to coerce the other participant to submit." § 709.4(4). It was not necessary to prove all three means of committing the offense. *State v. McGinnis*, 243 N.W.2d 583, 589 (Iowa 1976).

 The trial information here charged that defendant exercised parental authority over the victim in order to coerce submission. Defendant claims the record failed to establish the existence of the authority or that it was so used. Defendant here was also charged as a member of the same household and one related to the victim by blood or affinity within the prohibited degree. There was ample evidence to establish the charge.

 We also think the evidence was sufficient to show the alleged misuse of parental authority. We view the evidence in the light most favorable to the State and all reasonable inferences to support the conviction are accepted as established. *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981). We consider all the evidence. *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980). The credibility of the witnesses is for the fact finder. *Robinson*, 288 N.W.2d at 341. Under this test a jury question was made out. The victim testified her father coerced her into cooperation by threatening to limit her social activities. Though she testified at trial she was not then afraid of her father she also said she was afraid of him at the time of the assault. Defendant's challenge to the victim's testimony as oscillating and uncertain is not well founded. Her vacillation was not from a clouded memory but from her reluctance to testify.

The assignment is without merit.

 IV. Defendant's final assignment, based on the contention that section 907.3 is unconstitutional, is without merit. *State v. Cobb*, 311 N.W.2d 64, 67–68 (Iowa 1981); *State v. Wright*, 309 N.W.2d 891, 894 (Iowa 1981).

As all of defendant's assignments are without merit the judgment of the trial court is affirmed.

AFFIRMED.

All Justices concur except ALLBEE, UHLENHOPP and McCORMICK, JJ., who dissent.

ALLBEE, Justice (dissenting).

I would reverse on the ground that trial court erred in admitting evidence of sexual activity between defendant and the victim's older sister. This testimony was subject to the rule which prohibits evidence of other crimes or bad acts committed by a defendant, and it came within no valid exception to that exclusionary rule. Therefore, trial court had no discretion to admit the evidence.

The rule which excludes evidence of other crimes or bad acts has long been a part of Anglo-American and Iowa jurisprudence. The purpose of this rule is to prevent the jury from considering evidence which has no relevance except to show that the defendant is of bad character and therefore is more likely to have committed the crime charged. *State v. Cott*, 283 N.W.2d 324, 326 (Iowa 1979); *McCormick's Handbook of the Law of Evidence* § 190, at 447, 453 (2d ed. 1972). Accordingly, when other-crimes evidence is offered for some purpose *other* than to show that the defendant acted in conformity with his bad character, it es-

capes the ban of the rule and is admissible. *Cott*, 283 N.W.2d at 326. This court has recognized a number of noncharacter objectives of proof for which such evidence may be admitted, including:

> (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or system of criminal activity embracing the commission of two or more crimes so related that proof of one tends to prove the other, (5) identity of the person charged with the commission of the crime.

*Id.* These categories of proof are often referred to as "exceptions" to the exclusionary rule.

The so-called exception relied upon by the majority differs from the well-established exceptions listed above, in that it identifies no noncharacter purpose for which the evidence is offered. Rather, the rationale is that a person who has committed "certain unnatural sex crimes" in the past is very likely to have committed a similar act upon the occasion involved in the charge. In the present case, for example, evidence of defendant's sexual activity with his older daughter is relevant to the crime charged *only* by way of an inference that a man who has engaged in sexual activity with one daughter is likely to do so with his other daughters. While I agree it is tempting to draw such an inference, it is precisely this kind of character inference that the exclusionary rule was designed to prevent a jury from making. Thus, unlike the recognized exceptions, which actually fall outside the scope of the exclusionary rule, the exception relied upon by the court today cuts right to the heart of that rule and eviscerates it.

The majority's reliance on McCormick, *supra*, is misplaced. This is revealed by the full text of the paragraph from which the majority has quoted only in part:

> [One of the purposes for which evidence of other crimes is admissible is] [t]o show a passion or propensity for illicit sexual relations *with the particular person concerned in the crime on trial. Other like sexual crimes with other persons do not qualify for this purpose.* It has been argued that certain unnatural sex crimes are in themselves so unusual and distinctive that previous such acts by the accused with anyone are strongly probative of like acts upon the occasion involved in the charge, *but the danger of prejudice is likewise enhanced here, and most courts have in the past excluded such acts with other persons for this purpose.* More recent cases show signs of lowering this particular barrier to admission.

McCormick, *supra*, § 190, at 449–50 (emphasis added) (footnotes omitted).

The majority also relies upon *State v. Maestas*, 224 N.W.2d 248 (Iowa 1974). I believe that *Maestas* has been discredited by our opinion in *Cott*, 283 N.W.2d at 327, and that we should take this opportunity to overrule *Maestas* rather than attempt to revive it.

In *Maestas*, where the defendant was charged with committing lascivious acts upon his twelve-year-old daughter, the court indicated that evidence of the defendant's prior sexual relations with the two older sisters of the prosecuting witness "arguably" came within either the exception relating to a common scheme of criminal activity or an exception permitting introduction of evidence to show the "lewd disposition" of the defendant. *Maestas*, 224 N.W.2d at 250–51. The broad "lewd disposition" exception referred to in *Maestas* was later rejected by this court in *Cott*:

> [E]vidence tending to prove a lewd disposition of the defendant charged with lascivious acts with a minor was originally considered relevant only insofar as it showed his intent solely *toward the prosecuting witness.* Almost imperceptibly, the lewd disposition exception was overextended to permit evidence of the defendant's acts with other victims. First, in *Schlak*, [253 Iowa 113, 111 N.W.2d 289] it crept in as a synonym for motive. Then, in *Maestas*, it was used as an alternative rationale to the common scheme exception. However, proving lewd disposition has never been the sole purpose for which this court has approved the admis-

sion of testimony concerning prior acts with persons other than the prosecutrix. Nor are we now disposed to endorse lewd disposition as a separate, exclusively adequate exception to the rule prohibiting the admission of testimony regarding prior victims. *A focus on the criminal or aberrant disposition of the defendant with regard to various victims is exactly the sort of prejudice which the general rule seeks to avoid. By creating an exception of this kind, we would seriously erode the impact of the general rule, proscribing evidence of prior criminal conduct, in the context of sex crimes. The resultant unfairness to those accused of sex crimes is self-evident.*

*Cott*, 283 N.W.2d at 327 (emphasis added) (footnotes omitted).

Thus, the only possible rationale for the *Maestas* decision which remains after *Cott* is that the evidence came within the common scheme exception. Even that exception, however, is inapplicable to the other-crimes evidence at issue in *Maestas* and in the case at bar. Previous decisions by this court have made it clear that a mere showing that the defendant has committed highly similar offenses does not bring the evidence within the common scheme exception. For example, in *State v. Wright*, 191 N.W.2d 638, 641 (Iowa 1971), this court held that in a trial for the theft of soybeans, evidence that the defendant had participated in other soybean thefts in the same neighborhood during the same general time period was not within the common scheme exception. The court observed:

Assuming the evidence shows what the State claims for it, the most that can be said is that defendant first stole soybeans from one of the other farms and, being successful, was emboldened to engage in other thefts until he ultimately came under suspicion. Nowhere is there any suggestion that one crime was dependent upon or connected with any of the others. Each was, under this record, a separate and independent crime.

It appears beyond dispute that the State sought to introduce evidence of other crimes to persuade the jury that a person who had stolen soybeans on several prior occasions was very likely to have stolen them on this occasion also—the very rationale the rule is designed to guard against.

*Id.*

Likewise, in another case also entitled *State v. Wright*, 203 N.W.2d 247 (Iowa 1972), it was held that evidence of the defendant's lascivious conduct toward his natural daughter was inadmissible in a trial where he was charged with the statutory rape of a stepdaughter. The court noted that the evidence would be admissible only if the separate offenses were "so related to each other that proof of one tend[ed] to establish the other," and observed that "[t]he State failed utterly to prove that relationship here." *Id.* at 251.

Finally, in *Cott*, a prosecution for lascivious acts with a child, we found the common scheme exception inapplicable to evidence of the defendant's previous lascivious acts with a different child in which he employed a similar *modus operandi*. 283 N.W.2d at 328. There we said:

The fact that defendant committed crimes of the same nature against the two girls is insufficient to bring the testimony within [the common scheme] exception.... [T]he only basis for our applying [that] exception in this case would be an assumption that the accused was compelled by some sort of internalized plan or character defect. That would place us perilously close to relying upon the defendant's criminal disposition to find relevance in the disputed testimony.

*Id.* (citations omitted).

Because the common scheme exception is clearly inapplicable to the evidence of defendant's sexual activity with the victim's sister, and because defendant's trial involved no issue as to motive, intent, mistake or identity, it is apparent that the majority has carved out a special exemption from the exclusionary rule for what the court vaguely refers to as "unnatural sex crimes." In other words, persons charged with these crimes will not receive the protection of the

exclusionary rule that other criminal defendants receive. There is no basis, however, for such a difference in treatment. As we noted in *Cott*, "[t]he implicit assumption in treating sexual offenders differently from other criminals is that they have a greater propensity for recidivism. Most studies show this assumption unwarranted. [Citations.]" 283 N.W.2d at 327 n.2. Until the court has some sound data showing that evidence of a defendant's involvement in a similar crime is substantially more probative in the case of a sex crime than for other types of crime, the exclusionary rule should be applied equally to both types of defendants.

The trend among a number of courts to dilute the protections of the exclusionary rule in sex crime cases has been widely criticized by the commentators. *See, e.g.,* Gregg, *Other Acts of Sexual Misbehavior and Perversion as Evidence in Prosecutions for Sexual Offenses,* 6 Ariz.L.Rev. 212 (1965); Note, *Time for Change: Evidentiary Safeguards Needed in Trials for Sexual Offenses,* 11 Ind.L.Rev. 895 (1978); Note, *Evidence of Defendant's Other Crimes: Admissibility in Minnesota,* 37 Minn.L.Rev. 608, 614 (1953); Comment, *Defining Standards for Determining the Admissibility of Evidence of Other Sex Offenses,* 25 U.C.L. A.L.Rev. 261, 278–82 (1977). After the steps taken in *Cott* to counteract the beginnings of such a trend in our own case law, I regret that the court has now, by its decision in this case, chosen to turn back the clock. This court should resist basing its decision on an emotional reaction to a repugnant crime rather than on sound evidentiary principles.

UHLENHOPP and McCORMICK, JJ., join this dissent.