# IN THE COURT OF APPEALS OF IOWA

No. 20-0085
Filed July 21, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOSHUA G. CHAPALONIS,**
        Defendant-Appellant.
_____


Appeal from the Iowa District Court for Cass County, Jeffrey L. Larson,

Judge.


A defendant appeals his seven convictions for sexual abuse in the second

degree. **AFFIRMED.**


Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer, Assistant

Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee.


Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

Joshua Chapalonis confided to a substance-abuse counselor that he had suicidal thoughts and "touched somebody in his sleep," thinking it was his girlfriend. He disclosed he was worried about going to prison. He also expressed concern that his girlfriend would find out he was unfaithful and his infidelities might have led to a pregnancy. Believing Chapalonis may have abused a child in his household, the counselor reported his statements to authorities. Chapalonis now complains the district court allowed the counselor to share privileged communications with the jury without a proper waiver. *See* Iowa Code § 622.10(1), (2) (2020). He also objects to testimony from a forensic interviewer as vouching for the veracity of the alleged victim. On these two bases, he asks us to reverse his seven convictions for sexual abuse in the second degree and order a new trial. We decline to grant a new trial on either basis. First, any confidential information reported by the counselor was subject to disclosure under Iowa Code section 232.74. Plus, the counselor's testimony was cumulative to other information in the record and harmless. Second, the district court did not abuse its discretion in allowing the forensic interviewer to address the phenomenon of delayed reporting. And Chapalonis failed to preserve his other objections to her expert testimony. So we affirm.

**I. Facts and Prior Proceedings**

Chapalonis moved in with Nicole and her three children in April 2014. At first he was helpful around the house and interacted well with the children. But he soon became abusive, beating Nicole in front of her daughter and two sons. Then in January 2019, Nicole learned from the Iowa Department of Human Services

(DHS) that Chapalonis "confessed to having some kind of interaction" with her daughter, M.A.

That "confession" came in revelations to Amanda Smith, his substance-abuse counselor, that "he had touched somebody in his sleep." Chapalonis told Smith that he "didn't mean to do it" and "thought it was Nicole." Smith "asked if the children were okay" because she knew they lived in the home with him. Chapalonis "didn't want to answer that question" and "thought that he would go to prison." Smith also recalled "[h]e was worried that his significant other would find out that he was cheating on her and that the individual he was cheating on her with was pregnant." Of immediate concern to Smith, Chapalonis had taken a syringe of insulin from Nicole, who was diabetic, and threatened to kill himself. At Smith's urging, Chapalonis called Nicole to discuss his suicidal thoughts. Chapalonis later told Nicole that her daughter "got in bed with him and that he touched her breasts."

After those disclosures, Smith felt compelled to contact authorities about a possible case of child sexual abuse. In turn, the DHS contacted Nicole to set up a safety plan. In response, Nicole asked M.A. if Chapalonis touched her. At first she said "no." But soon, M.A. started to cry and said "yes." M.A. eventually told her mother that Chapalonis "had her pregnancy tested twice." As a reward for the negative test results, Chapalonis bought the child a treat at McDonald's. Nicole later found the McFlurry cup under the family's front deck and the discarded pregnancy kits near the neighborhood baseball diamonds.

After talking to her mother, ten-year-old M.A. had a forensic interview with Amy Cirian at Project Harmony. M.A. said Chapalonis started sexually abusing

her at age seven. Based on M.A.'s recollections, the State charged Chapalonis with eight counts of sexual abuse in the second degree, class "B" felonies, in violation of Iowa Code sections 709.1(3) and 709.3(1)(b)(2).

Before his jury trial, Chapalonis moved in limine, asking the court to prevent the State from introducing, among other things, "any testimony regarding alleged statements [he] made during confidential communications with any professional." The court reserved ruling on that point. In the same order, the court denied the defense request to prevent the State from offering expert testimony about delayed disclosure as it relates to the credibility of child witnesses. The court explained that type of testimony was appropriate "as long as [it was] non-specific to the facts of this case or that specific witness." In its written ruling, the court advised counsel "that at any time the parties may ask the Court to reconsider any portion of their motion in limine."

At trial, the State offered testimony from Smith and Cirian, as well as M.A., M.A.'s brother, Nicole, and other witnesses. M.A. detailed many sex acts perpetrated by Chapalonis, including contact between his penis and her vagina, his hand and her vagina, his penis and her mouth, and his penis and her anus. At the close of the State's case, the district court granted the motion for judgment of acquittal on one of the eight counts. The jury returned guilty verdicts on the other seven offenses. The court sentenced Chapalonis to consecutive prison terms on the first two counts and concurrent terms on his remaining convictions, for an indeterminate fifty-year term. Chapalonis now appeals.

**II. Analysis**

   **A. Privileged Communications**

Chapalonis contends the district court wrongly admitted portions of Smith's testimony, which conveyed confidential communications protected by Iowa Code section 622.10(1). Because his contention involves statutory interpretation, we review for legal error. *See State v. Richmond*, 590 N.W.2d 33, 34 (Iowa 1999). The burden rests with Chapalonis to prove his communications with his substance-abuse counselor were privileged. *See id.* at 35.

> Under section 622.10(1), a mental health professional,
>
> who obtains information by reason of the person's employment, . . . shall not be allowed, in giving testimony, to disclose any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.

Chapalonis claims Smith disclosed to the jury two sets of statements that were privileged under this section.[1] First, he points to his refusal to answer for fear of going to prison when Smith asked whom he touched and "whether the children were okay." Second, he identifies the counselor's testimony that he was afraid Nicole would find out that he was "cheating on her" and the person with whom he was cheating might be pregnant.

Responding to those claims, the State "assumes without conceding" that the statements at issue were confidential and entrusted to Smith in her professional capacity. But the State argues the statements were not privileged

---

[1] Chapalonis acknowledges that his statements to the counselor about his suicidal thoughts and that he had "touched somebody in his sleep" were not privileged because he waived confidentiality by sharing that information with Nicole.

because the information received was not "necessary and proper" to allow Smith to discharge her duties as a substance-abuse counselor. The State asserts: "sexually abusing a child and potentially getting her pregnant is logically divorced from substance-abuse counseling." On the contrary, Chapalonis insists "Smith needed to get to the source of Chapalonis's problems in order to try to counsel him to a better mental state."

We do not believe the privilege should be viewed as narrowly as the State asserts. *See State v. More*, 382 N.W.2d 718, 722 (Iowa Ct. App. 1985) (rejecting State's position that information obtained by psychiatrist at hospital should not be privileged if defendant was not admitted for mental-health treatment). For the most part, we liberally construe statutes creating privileges. *In re A.M.*, 856 N.W.2d 365, 373 (Iowa 2014). We do so here because the purpose of section 622.10 is "to promote free and full communication" between the patient and the counselor. *State v. Deases*, 518 N.W.2d 784, 787 (Iowa 1994). Smith testified that as part of her employment she deals with "individuals at various levels of recovery" and it's not unusual that they are "experiencing distress" when interacting with her. In that context, it would be necessary and proper for her to learn from patients any sources of distress that could impede their recovery. On this record, the challenged testimony was privileged under section 622.10(1).

As an alternative argument, the State contends any counselor–patient privilege was "abrogated" by the mandatory reporter statute.[2] *See* Iowa Code

---

[2] The county attorney advanced a similar argument at trial. And while the transcript is not explicit on this point, it appears the district court embraced this ground in allowing Smith's testimony. Yet Chapalonis did not address this argument in his appellant's brief and did not file a reply brief.

§ 232.69(1). The State asserts the legislature "eliminated the privilege for mandatory reports" under section 232.74. But Smith was not a mandatory reporter of child abuse when counseling Chapalonis. *See* Iowa Code § 232.69(1)(a), (b).[3] Instead, Smith's permissive report of suspected abuse fell under section 232.69(2).

That said, the legislature did not limit the privilege exception in this chapter to mandatory reporters. *See State v. Cahill*, 186 N.W.2d 587, 589 (Iowa 1971) ("Anyone can make a report . . . . The definition of report for the purpose of this chapter is thus given the broadest possible meaning."). Instead, section 232.74 provides an expansive exception for child-abuse reports:

> Sections 622.9 and 622.10 and any other statute or rule of evidence which excludes or makes privileged the testimony of a husband or wife against the other or the testimony of a health practitioner or mental health professional as to confidential communications, do not apply to evidence regarding a child's injuries or the cause of the injuries in any judicial proceeding, civil or criminal, resulting from a report pursuant to this chapter or relating to the subject matter of such a report.

Likewise, the language in section 232.74 referring to "evidence regarding a child's injuries or the cause of the injuries" does not restrict its application here. In

---

[3] That statute provides:

> 1. The classes of persons enumerated in this subsection shall make a report within twenty-four hours and as provided in section 232.70, of cases of child abuse. . . .
> a. Every health practitioner *who in the scope of professional practice, examines, attends, or treats a child* and who reasonably believes the child has been abused. . . .
> b. Any of the following persons who, in the scope of professional practice or in their employment responsibilities, examines, attends, counsels, or treats a child and reasonably believes a child has suffered abuse:
> . . . .
> (6) An employee or operator of a substance abuse program or facility . . . .

Iowa Code § 232.69(1) (emphasis added).

*State v. Spaulding*, 313 N.W.2d 878, 880 (Iowa 1981), the accused faced charges of third-degree sexual abuse for engaging in sex acts with his fifteen-year-old daughter. His wife testified at trial over his privilege objection. *Id.* at 880. Spaulding claimed on appeal the exception to marital privilege did not apply because the sexual-abuse charge did not involve a "child's injuries" under the section. *Id.* Our supreme court rejected that argument because the statutory definition of child abuse included "harm or threatened harm occurring through . . . [t]he commission of any sexual abuse with or to a child as defined by chapter 709 . . . ." *Id.* (citing Iowa Code § 232.68 (1981)).[4] Although the legislature has tinkered with the wording of section 232.68 since *Spaulding*, the definition of child abuse still includes "the commission of a sexual offense with or to a child pursuant to chapter 709." Guided by *Spaulding*, we find Smith's report of potential child abuse met the requirements for admission under section 232.74.

But even if the district court should have excluded those privileged communications under chapter 232, any error was harmless. "[W]here substantially the same evidence is in the record, erroneously admitted evidence will not be considered prejudicial." *State v. Sowder*, 394 N.W.2d 368, 372 (Iowa 1986). Echoing Smith's revelations, M.A.'s mother testified Chapalonis told her "he did something really bad that he didn't want to tell me about because he would end up in prison." In that same vein, M.A.'s brother testified he once saw a pregnancy test in Chapalonis's car and Chapalonis told him "it was for a girl that

---

[4] We acknowledge *Spaulding* does not provide an in-depth analysis of its logic when mentioning the statutory definitions of child abuse. Nevertheless, we consider ourselves bound by its bottom line.

he was cheating on my mom with." Because Smith's testimony was cumulative, it does not compel reversal of the jury's verdicts.

What's more, M.A. provided detailed accounts of years of sexual abuse by Chapalonis. Her recollection that Chapalonis forced her to take home pregnancy tests was corroborated when her mother found used "Clearblue" test kits in the ditch where M.A. said Chapalonis had tossed them. Her mother also found a McFlurry cup under their deck where M.A. had thrown it after consuming the celebratory treat Chapalonis bought her for taking the pregnancy tests. More corroboration came from M.A.'s brother, who testified that he sometimes saw Chapalonis go into M.A.'s bedroom when their mother was not home. M.A.'s brother testified he once saw them lying together in bed and Chapalonis was "moving in." Given the overwhelming evidence of Chapalonis's guilt, the admission of any confidential communications was harmless error. *See More*, 382 N.W.2d at 723.

## B. Expert Vouching

As a second ground for reversal, Chapalonis claims forensic interviewer Cirian impermissibly vouched for M.A.'s credibility. He complains the court allowed Cirian to testify it was "very common for children to delay disclosures" of sexual abuse. He also highlights Cirian's testimony that children did not always remember specific dates of the abuse, false reporting is rare, and children over the age of ten are no more susceptible to suggestion than adults.

The State contends Chapalonis did not preserve error on these claims. The State recognizes Chapalonis objected to Cirian's testimony on delayed reporting in his motion in limine, which the district court denied. Still, the State contends the

court left the door open to reconsideration of "any portion" of its limine ruling. *See State v. Tangie*, 616 N.W.2d 564, 568 (Iowa 2000) ("Ordinarily, error claimed in a court's ruling on a motion in limine is waived unless a timely objection is made when the evidence is offered at trial."). On the issue of delayed reporting, we disagree with the State. When Chapalonis renewed his objection before Cirian's testimony, the court resolved the delayed-reporting challenge. That issue is preserved. The court's promise to entertain further objections during Cirian's testimony was limited to responses "considered hearsay or objectionable in some other way." But we agree Chapalonis failed to preserve his other objections to Cirian's expert testimony. They were not described in the motion in limine and not raised during her testimony. So we address only the challenge to Cirian's testimony about victims' delayed reporting of sexual abuse.

An expert is not allowed to comment—directly or indirectly—on another witness's credibility. *State v. Dudley*, 856 N.W.2d 668, 677 (Iowa 2014). Chapalonis contends the court should not have allowed Cirian to discuss the phenomenon of delayed reporting because it was an indirect comment on M.A.'s credibility. We review this evidentiary challenge for an abuse of discretion. *Id.* at 675.

Contrary to Chapalonis's contention, the district court did not abuse its discretion in allowing Cirian to testify about why child victims may delay reporting their sexual abuse. *See State v. Payton*, 481 N.W.2d 325, 327 (Iowa 1992). Cirian avoided referring directly to M.A., instead listing the many reasons child victims, in general, may be reluctant to disclose abuse. *See Dudley*, 856 N.W.2d at 676.

Cirian explained:

> They may have been threatened. They may . . . not understand if it's abuse. They may like that person. There's a lot of reasons. A lot of times kids understand more than what we think they do. They understand who pays the bills, they understand relationships. There's just a lot of reasons why they may not tell.

As it happens, some of those reasons applied to M.A.'s situation, but some did not. For example, M.A. was not fond of Chapalonis and spent time at her grandmother's house to avoid being around him. Likewise, Chapalonis was not the main breadwinner for the family, working less than M.A.'s mother. All in all, Cirian's testimony did not connect M.A.'s experience to the expert's general observations about delayed disclosure. *See State v. Leedom*, 938 N.W.2d 177, 193 (Iowa 2020). In our view, Cirian's testimony did not vouch for M.A.'s credibility. So we find no abuse of discretion by the district court.

**AFFIRMED.**